Wm. A. McLean, Appellant, vs. Leonidas W. Spratt, Appellee.

1. Upon a sale of real estate at auction the agent of the vendor announces that the purchaser upon the payment of $500 cash shall be entitled to possession and future rents from a date stated. The purchaser pays the $500, the agent gives him a list of the tenants, and the purchaser treats with one of the tenants upon the basis of the relation of tenant from month to month to him as landlord, such agent acquiescing by his silence and presence in the existence of such relation. *Held :* That the creation of such relation of tenant from month to month in the manner stated is legal, not in conflict with the statute of frauds, and that in order to constitute an unlawful detention of possession of such property under the statute regulating the subject, the landlord must show a notice to quit conformable to the terms or to the law of the contract of tenancy or a holding over after legal demand of the payment of rent due.

2. A simple demand of possession is not a notice to quit, nor do the facts that the tenant failed to pay the rent but admitted his responsibility for it and promised to pay it, constitute such a legal demand as is necessary to establish an unlawful detainer under the statute.

Appeal from the Circuit Court for Duval county.

This is a proceeding by the appellee under the statute to recover possession of real estate claimed by him to be unlawfully detained or withheld by the appellant.

The other facts are sufficiently stated in the opinion.

*Meek & Deans* for Appellant.

*Cockrell & Walker* for Appellee.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

On the 25th of March, A. D. 1880, defendant, McLean, was in possession of the real estate sought to be recovered in this proceeding, as tenant of the Commissioners of the Freedmen's Savings and Trust Company under an agreement with their agent, Mr. Greeley. He was tenant from month to month, entitled to thirty days' notice to quit, and the rent was $25 per month. On the day named, the 25th of March, A. D. 1880, Mr. Greeley, the agent of the Commissioners, offered the property for sale, the terms stated as to possession being that upon the payment of $500 cash the purchaser should have possession from the first of April, 1880. Spratt, the plaintiff in this suit, became the purchaser and made the cash payment. One of the witnesses who speaks of the sale says : " I was at the sale of the premises in question on the 25th March, 1880. It was announced by Mr. Greeley, who offered the property for sale, that the purchaser, upon the payment of $500 down, could go immediately into the possession of the property, and receive the rents therefor after the first of April, 1880. The rent for the said month of March was to go to the Commissioners." McLean, the tenant, states : " I remember the occurrences of that day " (25th March, 1880,) " in matter of alleged sale ; that (upon) day of the sale plaintiff and Col. Cockrell, who was with Mr. Spratt at the Florida Savings Bank, Mr. Greeley being present, a conversation there took place between us in relation to my tenancy of the third floor of the building described in the notice. I asked Mr. Spratt if he was going to turn tenants out, me in particular. He said he did not propose to make any changes. * * * I supposed him to be the landlord, and recognized him as such until the latter part of May, 1880. Mr. S. made demand

upon me about the 30th of May, 1880, for possession."
The plaintiff testifies that he entered upon the premises by
virtue of a memorandum from Mr. Greeley, which was a
list of tenants of the building; and that the defendant
(McLean) never paid him any rent between the 27th and
30th of May, 1880. Mr. Greeley, the agent of the Com-
missioners, tendered to the plaintiff (Spratt) a deed to the
property. Spratt objected to the title offered as not good,
and declined to accept it. Spratt testifies that he was
never given any keys to the building, and that no agent
went to the premises with him, but that the agent did
give him a list of the tenants immediately after the sale.
The agent never offered to return the $500 cash paid upon
the sale. After the Commissioners were advised that Spratt
delayed " compliance with the tenor of sale unnecessarily,"
and on the 16th of April, 1880, they instructed their agent
(Greeley) to keep possession and continue to collect rents,
the Commissioners stating that " those accruing on and
after the day of sale would be by us accounted for to the
purchaser." On the 17th of May the Commissioners write
their agent again to " proceed to collect the rents as if said
sale had not taken place."

These facts fix the relation between the plaintiff and de-
fendant here as that of landlord and tenant. The agent of
the vendors announces at the sale that upon the payment
of $500 the vendee shall be entitled to the possession,
should have the rents, and the agent furnishes the vendee
with a list of the tenants. Upon the day of sale the de-
fendant has a conversation with the plaintiff upon the sup-
position and in that view, the agent of the vendor being
present and not in any manner objecting. After this the
defendant acknowledged and recognized plaintiff as land-
lord. It is not necessary that possession by symbol, as by
delivery of keys, or possession by actual occupancy should

exist in all cases. Here the tenant of the vendor accepted the vendee as his landlord, the vendee being entitled to possession under his existing contract of sale, and the vendor assented by his silence when the tenant treated the vendee in his presence as his future landlord, the vendor having furnished the vendee with a list of the tenants of the building. These acts were equivalent in law to the delivery of the actual possession by vendor to vendee, and there is nothing in the statute of frauds which prohibits a vendee from acquiring actual possession of lands under a verbal contract of sale involving future payments to his vendor and the acquisition of a complete title. What the nature of that possession may be as between vendor and vendee, and their respective rights under the contract, are questions to be settled in a proceeding between them. So far as the actual possession is concerned here, the vendee had it. He was entitled to it because he had paid for it, and his vendor had surrendered it to him. The contract, so far as the present possession was concerned, was *executed*, and after acceptance of plaintiff, the vendee, as his landlord by defendant, the vendor's tenant, with the vendor's assent, there can be no doubt that the vendee here had all the rights of a landlord, and the tenant was possessed of the rights and subject to all the duties of a tenant to him as such landlord. What were those rights and duties here? The tenant was not in here as of an estate requiring a writing of any character to pass it. He was a tenant from month to month under a parol lease entitled to thirty days' notice to quit, and his contract was to pay twenty-five dollars per month rent. Has he rendered himself liable to eviction by illegal holding after notice to quit, or for non-payment of rent after legal demand thereof? These are the only grounds upon which it can be pretended here that there is an unlawful detention of possession.

What is the testimony as to these matters? The tenant (and defendant) testified that Mr. Spratt (the plaintiff and landlord) "made demand upon me about the first of June, 1880, for possession of the floor occupied by me." He says again that he thinks the date of the "demand of possession was about the 30th of May." This is all as to notice to quit. As to demand of rent, the tenant says: "I supposed I would account to Mr. Spratt for the rent. I was notified by Mr. Greeley not to pay rent to Mr. Spratt in the last of May, 1880." Plaintiff himself testified that "Mr. McLean, the defendant, never paid me any rent. He stated to me that he was responsible for the rent and that he would pay it."

This is a summary proceeding by complaint from an unlawful detention of real estate. What constitutes an unlawful detainer? In this case the right to retain could only have determined by a notice to quit or by non-payment of rent after demand. At common law the notice need not be in writing unless such was the agreement of the parties. It must correspond with such time as is fixed by the agreement, or which results in law from the nature of the tenancy. It must require the tenant to remove from the premises, and must be so certain as to make it impossible that the person receiving the notice should have been misled by it. It is, however, unnecessary to say more here than that a simple demand of present possession, which is all that the testimony shows, is not a notice to quit after the expiration of thirty days. Without an antecedent notice the landlord here was not entitled to possession, and it must be plain that a demand for a possession to which he is not entitled amounts to nothing, certainly not to a notice to quit at a future time. Neither at common law nor under any statute can this be called a notice to quit.

Was there a forfeiture of a right to retain possession after

legal demand of payment of rent ? The tenant testifies that he supposed he would account to plaintiff for the rent; that he was notified by Mr. Greeley not to pay rent to Mr. Spratt, and Mr. Spratt, the landlord, testifies that the tenant never paid him any rent, but admitted his responsibility and that he would pay it. There is certainly no *demand* here for anything, and a waiver of a demand will never be implied to aid a forfeiture. See cases on this subject cited in Taylor's Landlord and Tenant, 6 Ed., §§297, 493.

The result of what has been said is that the plaintiff here upon his own case and testimony has failed to establish that he has given the notice to quit required by his contract, or made the demand for payment of rent required by law, and that his tenant does not unlawfully retain possession of the premises as against him.

Something was said in argument as to possession of defendant when the action was brought. The testimony shows that he was in possession. It is thus clear that upon the supposition that the charges of the court upon the law were correct, the finding of the jury was contrary to the evidence, and if the charge of the court was not correct as to those material points, then the verdict should be set aside upon that ground. In either view, therefore, the judgment must be reversed here, and for this reason it is unnecessary to enter into any elaborate examination of the instructions of the court. Upon the evidence viewed most favorably for the plaintiff, he failed entirely and plainly to make out his case.

Judgment reversed and new trial awarded.