20  515
30   58

---

W. A. McLEAN, APPELLANT, VS. L. W. SPRATT, APPELLEE.

1. In proceedings under the unlawful detainer act against a tenant to recover possession, the tenant cannot show as a defence that his lessor had no title, or that his title was defective, or that it was only an equitable title. The tenant's liability does not depend upon the rights of third persons but on his contract with the lessor.

2. If the purpose of putting a question to a witness is not apparent with reference to the pleadings or to the testimony already given, it is not error to overrule the question, unless its object be stated so that its materiality may be made manifest.

3. A demand of a tenant by his landlord of the amount of rent due, is a sufficient demand of the *precise sum* due without naming the amount, in a suit to recover possession for non-payment.

4. Double the rental value of premises is not recoverable in a suit for an unlawful detainer unless it appears affirmatively from the testimony that the detention was willful and knowingly wrongful on the part of the tenant.

5. Where in the proceedings in a case like the present there is no error found on appeal, except that the jury have given excessive damages and the correct amount is easily ascertainable, the judgment will be reversed unless the excessive amount of damages is remitted.

Costs in this court taxed against appellee.

Appeal from the Circuit Court for Gadsden county.

The facts of the case are stated in the opinion.

*Geo. Wheaton Deans* for Appellant.

*A. W. Cockrell, John T. & Geo. U. Walker* for Appellee.

THE CHIEF JUSTICE delivered the opinion of the court.

This was a suit brought by respondent as plaintiff against appellant as his tenant, to recover possession of certain premises, to-wit: rooms in the (so-called) Freedman's Bank Building, in Jacksonville. The suit was brought under the statute, sec. 4, chapter 1630, Laws of 1868. The case was before us on appeal at June term, 1882, (19 Fla., 97.) The testimony as to the possession of the plaintiff and the contract of tenancy was substantially the same as on the previous trial, and supports the verdict of the jury as to the fact that appellant was the tenant of plaintiff from the first day of April, 1880, under a verbal agreement by

which appellant was to pay twenty-five dollars per month, payable monthly, and further, that he was to have thirty days' notice to quit.

The suit was commenced June 5, 1880, and the verdict rendered November 26, 1883, being three years, five months and twenty-six days. The jury found in favor of the plaintiff, and assessed the damages at $2,195. Plaintiff remitted one hundred dollars, and judgment was entered against defendant upon the verdict, less $100 of the damages.

1. The first exception is taken to the ruling of the court sustaining plaintiff's objection to the following question by defendant's attorney to the plaintiff: " was a deed of the land tendered you by the agent of the Commissioners of the Freedman's Savings and Trust Company, and did you refuse to take the deed and pay the balance of the purchase money the latter part of the month of May ensuing, say the 29th day of May ? "

The testimony had shown that plaintiff bid in the property at a public sale made by the Commissioners on the 25th March, 1880, had paid an installment of purchase money, and had been placed in possession by the agent of the Commissioners ; and the defendant had, by the assent of both parties, attorned to plaintiff.

If the object of the question was to show that the sale had not been perfected owing to differences that had arisen between the parties to it, and that plaintiff was not lawfully entitled to the possession as between himself and the Commissioners, it was not a material question in the case. The controversy between the parties claiming the legal or equitable title cannot be tried in this proceeding, and it does not concern this defendant. Nor can this defendant, as a tenant, question the title of his lessor. If other parties have interests antagonistic to the claim of the plaintiff to this property, they should seek a wider jurisdiction, and

make proper parties. This defendant as a tenant, even if the action had been ejectment, " cannot show that his lessor had only an equitable title, or that his title was probably defective." Taylor's L. & T., §707 ; 8 T. R., 487 ; 2 W. Bl., 1259 ; Blight's Lessee vs. Rochester, 7 Wheat., 535, 547. The question was properly excluded. Defendant's liability does not depend upon the rights of third persons, but upon his contract with plaintiff. If there was any other object in proposing the question than those we have indicated, it is not apparent.

2. The next exception is to the exclusion of the question : " Are you now in possession of the premises in question ?" which was put by defendant's counsel to defendant as a witness. The object of the question was not stated and is not patent. If the purpose was to show that defendant had surrendered possession to the plaintiff it should have been so stated. If it was to show that plaintiff had assigned his lease, that should have been stated. If it was. to show that defendant had attorned to some other than plaintiff, or given possession to some third party without plaintiff's consent, it was not a proper matter of defence. We do not see where the error lies in the ruling.

3. A further exception is that the court excluded a question by defendant's counsel to Mr. Greeley, to wit : " Did you have any authority from the Commissioners of the Freedman's Savings and Trust Company to make any such statement ? " Mr. Greeley had said that he " never stated at the time of the alleged sale that the purchaser should be put in possession of the premises upon the payment of any sum less than the full amount of the purchase money," and this had reference to testimony as to what had been stated by Mr. Greeley at the time of the sale to plaintiff.

As this referred to the controversy between plaintiff and the Commissioners of the Freedman's Savings and Trust

Company, a matter which cannot be adjusted in this suit, the question was not material to this defendant. The testimony showed that plaintiff had peaceable possession as a purchaser; that Greeley had given him a list of the tenants, of whom this defendant was one; that defendant had, in Mr. Greeley's presence, and in his office, agreed with plaintiff to become plaintiff's tenant, and to pay him the rent, and that at the end of the first month, on being called on for the month's rent, promised to pay it. At the end of the second month he said he was willing to pay, but Mr. Greeley had notified him that he, Greeley, claimed the rent on the ground that plaintiff had not fulfilled his agreement about the purchase. The whole testimony satisfied the jury that plaintiff had been put in possession as a purchaser, and that a controversy afterwards arose between plaintiff and Mr. Greeley, who was acting in behalf of the Commissioners, in respect to the completion of the bargain and sale. If we understand the purpose of the question asked, it is to enter into the controversy between plaintiff and the Commissioners, or their agent, which controversy or disagreement arose some weeks after the possession of the plaintiff and leasing by him to the defendant. It is an effort by the tenant to show defects in the plaintiff's legal or equitable title. Whatever the rule in ejectment, the inquiry cannot be allowed in this proceeding. Taylor's L. & T., §707; Chap. 1630, Laws 1868, Sec. 20.

4. The Judge charged the jury: "If you believe from the evidence that the defendant was in possession of the premises sued for when this action was commenced, and that the defendant recognized the plaintiff as his landlord, after the 25th of March, 1880; that previous to the commencement of the action the plaintiff made a demand on the defendant for payment of rent then due, and that

the defendant refused to pay, then they should find a verdict for the plaintiff."

This is excepted to on the grounds that it assumes there was evidence when there was none, to wit: as to the defendant's recognizing plaintiff as his landlord, as to the demanding of rent, and the refusal to pay; and that the charge is obscure, indefinite and tends to mislead the jury.

These grounds of exception appear to be without foundation. Nothing is assumed as to the proof, and the charge seems to be a correct legal proposition. It strips the case of everything but the issues between these parties, and confines the jury to the facts proved.

5. Another exception is that the Judge refused to charge that "unless you are satisfied from the evidence that the plaintiff demanded of the defendant the precise amount of the rent claimed to be due of the defendant, before the filing of this complaint, and that the defendant refused to pay it, your duty is to find a verdict for the defendant."

The Judge had charged that if they found "that previous to the commencement of the suit the plaintiff made demand on the defendant for payment of rent then due, and the defendant refused to pay," with other facts required to be proved, they must find for plaintiff. This is equivalent to charging that if they did not find from the evidence that such demand had been made and payment refused, they must find for defendant. Counsel in the argument place stress upon the language, "the precise amount due," and that the Judge did not use these words, or similar language, and cites Taylor's Landlord & Tenant, §493, to the effect that there must be a "formal demand of the *precise sum* due for the last current quarter." The case cited in that book as authority is Doe vs. Paul, 3 Car. & P., 613. Reference to that case shows that demand was made for the sum of 193 l., 10 s., whereas the quarter's rent was but

one-fourth of 75 l., and the court said: " The demand should have been for a *quarter's rent* only." The testimony of Spratt and McLean agrees that the monthly rent was to be twenty-five dollars, payable monthly. Spratt testifies that at the end of the first month he called upon McLean for the rent, and McLean " said he would pay me, knowing he was responsible," but did not pay, and Spratt did not then press him. " On the last day of May I again called on him in reference to the rent. He then declined to pay me on the ground that J. C. Greeley claimed that the rent was due him. The next day I instructed my attorney, A. W. Cockrell, telling him what had occurred, to make demand for the rent then due," and if it was not paid to demand possession of the premises.

The next day Mr. Cockrell saw McLean, and he testifies that he " demanded the rent due for the premises he was then occupying to L. W. Spratt. McLean declined to pay Spratt the rent upon the ground that Greeley claimed it." Mr. Cockrell then gave McLean a written notice, as follows: " To W. A. McLean, Esquire—Take notice, I hereby make demand upon you for the payment of the rent due from you for the tenements occupied by you in the Freedman's Bank Building in the City of Jacksonville in said county as a cigar factory in the room used in connection therewith, or hat you surrender the possession thereof. This June 1st, 1880. (Signed) Leonidas W. Spratt, by A. W. Cockrell, his attorney."

McLean " declined to accede to the demand, and within a few days thereafter suit was brought." The demands here testified to are of the amount of rent due, as to which there was no controversy. The first demand was at the end of the first month, and the subsequent demand at the end of the next month. The demands were of the precise amount due, to all intents. The words " unless you pay

what you owe me I shall take immediate measures to re-cover possession of the property," addressed to a tenant at will, were held a sufficient demand to maintain ejectment. Doe vs. Price, 9 Bingham, 356. The common sense of the rule is that if the plaintiff demands what he is entitled to, in language easily understood, it is sufficient. The neglect and refusal to pay the rent due after demand put an end to defendant's right of further occupancy under his con-tract. " In this case the right to retain could only have de-termined by a notice to quit, or by non-payment of rent after demand." McLean vs. Spratt, 19 Fla., 101.

The instruction which the Judge gave was, therefore, applicable to the testimony, and covered the essential prop-osition of the defendant's counsel. The jury were as clearly apprised of the rule of law to be observed as though it had been repeated in the form proposed.

6. The remaining exception to the charge of the court is to this language, given at the request of plaintiff's attor-ney : " If the jury find for the plaintiff, they may assess his damages at double the rental value shown by the evi-dence from the time when the unlawful holding by the de-fendant commenced, up to the present day, unless the jury are satisfied from the evidence that such unlawful holding or detention was not willful and knowingly wrongful ; but if the jury are satisfied from the evidence that such deten-tion was not willful and knowingly wrongful, then they will assess the damages at what they find from the evidence was simply the monthly rental value."

" In all cases arising under this act," it is provided by section 14, " evidence shall be admitted as to the monthly rental value of the premises, and in case of recov-ery by the plaintiff the jury shall fix his damages at double the rental value of the premises from the time of such un-lawful or wrongful holding, as to which evidence shall be

admitted : *Provided*, That damages in no case of detainer shall be fixed at more than the rental value of the premises, unless the jury be satisfied from the evidence that such detention *is* willful and knowingly wrongful."

The verdict in this case was for double the amount of the monthly rental value, as ascertained by the jury from the contract. This verdict must have been found under the instruction given, that the plaintiff was entitled to double damages, " unless they are satisfied from the evidence that the detention was *not* willful and knowingly wrongful;" whereas the act says the plaintiff is entitled to single damages only, unless the evidence shows affirmatively " that the detention *was* willful and knowingly wrongful."

From the evidence in this record we do not think the detention is shown to be wilful and knowingly wrongful. McLean, the defendant, says he was always ready and willing to pay the rent to whoever had the right to it. He acknowledges his tenancy to Spratt, and says he had been the tenant of Greeley as agent, &c. A controversy arose between Spratt and his predecessor, involving the validity of the transfer of the property to Spratt, and both parties claimed the rent from McLean, who simply hesitates between the claimants because he wants to be protected against paying twice. He declines to settle the question of law and fact between them at his own risk, and this is all. He has paid rent to neither of them. When he was notified by Greeley not to pay Spratt, about the latter part of May, he says: " I was bothered what to do; as I said before, I did not want to pay it but once."

This is far from showing a *willful and knowingly wrongful* detention by defendant. To support the claim for double damages against a tenant, (not a trespasser who has driven the plaintiff out of possession) something more than a refusal to pay rent or to quit, under circumstances which

might well induce a prudent man to hesitate between rival claimants, must be shown. The statute does not contemplate that every tenant who fails to pay rent may be fined to that extent, but it requires affirmative proof of " willful and knowingly wrongful " conduct.

There was error in the assessment of double the rental value of the premises, from the first day of June, 1880, to the day of rendering the verdict, November 26, 1883, a period of three years five months and twenty-six days at $25 per month. The rent for this period amounts to ten hundred and forty-six dollars and sixty-six cents. We find no other error in the proceedings.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and a new trial granted, unless the appellee, (plaintiff below) within twenty days after the filing of the mandate of this court in the office of the Clerk of the Circuit Court, the plaintiff or his attorney, shall file with the Clerk of said Circuit Court a *remittitur* of so much of the damages as awarded by the judgment entered as may exceed the sum of ten hundred and forty-six dollars and sixty-six cents ; in which case the judgment will stand for this amount of damages, and the costs properly included in the judgment of the Circuit Court. If such release shall not be entered, the judgment will be vacated and a new trial awarded. The costs of this appeal will be taxed against appellee.