## Fields & Combs v. Vizard Investment Company.

*(Decided February 29, 1916.)*

## Appeal from Perry Circuit Court.

1. **Vendor and Purchaser—Options and Exercise Thereof—Assignment.**—An option to purchase land at a fixed price for a definite time, not having been exercised within said time is without force or effect thereafter; and an assignment thereof made thereafter conveys no right to the assignee.

2. **Vendor and Purchaser—Options and Exercise Thereof—Revocation.**—A contract of agency for the sale of land not coupled with an interest and containing no stipulation as to time, is revocable at any time, and is revoked by an option given by the principal to a third party.

3. **Vendor and Purchaser—Options and Exercise Thereof—Specific Performance.**—If an option to purchase land is extended by agreement beyond the definite time fixed therein for its expiration to permit the removal of a cloud upon the title to the land involved, and the optionee fails to pay for the land and consumate the trade when requested to do so after the cloud is removed, he cannot thereafter enforce a specific performance.

MARTIN T. KELLY, HOGG & JOHNSON and F. J. EVERSOLE for appellants.

WOOTTON & MORGAN, BAILEY P. WOOTTON and JESSE MORGAN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On May 25, 1903, Eli Brashear made a contract for the sale of his land to J. C. Heydrick at $6.00 per acre, and acknowledged receipt of $100.00 payment on the purchase price.

On May 26, 1913, Wm. Fields entered into a contract for the sale of his land to J. C. Heydrick at $4.50 per acre, and acknowledged payment of $60.00 on the purchase price.

A short time thereafter Wm. Fields sold his land to Eli Brashear, so that Brashear owned all of the land covered by the two Heydrick contracts. These Heydrick contracts were similar and each contained the following paragraphs:

"This contract to be null and void if said land is not surveyed and paid for within twelve months from this date, unless the grantor should fail or refuse to make a good deed, as hereinafter stated."

"It is further agreed by and between the parties hereto that the grantee has a right at any time to surrender this agreement upon the payment of the sum of $25.00, which amount grantor hereby agrees to accept as a full consideration for the surrender of this agreement, and the grantee is thereupon released from all liability named in this agreement, and hereby forfeits the sum of $100.00, this day advanced on this contract."

These contracts were both acknowledged and recorded in due time.

On January 12, 1909, Eli Brashear entered into a contract for the sale of this same land with the North Fork Coal & Timber Company, which contract was recorded on August 9, 1909, and this contract made said company the agent of Brashear for the sale of the land.

On April 26, 1910, Brashear made a contract for the sale of this land to M. Cox, and this contract was recorded on April 30, 1910, and contained a provision that if the sale was not consummated within three months from date, it should be null and void. The price to be paid was $11.00 per acre, and $1,500.00 of which was acknowledged paid cash in hand.

On September 2, 1910, appellants placed to record assignments made to them August 6, 1910, of the Heydrick contracts.

On September 6, 1910, Brashear conveyed by deed all of this land to appellee, Vizard Investment Company.

On October 11, 1910, appellants filed this suit against appellee alleging that before the expiration of the three months option in the Cox contract and after its assignment to them, they notified Brashear of their intention to take and pay for the land under the Cox option, but before the deal could be consummated, it would be necessary to get rid of the Heydrick contracts and to complete the surveying, which would require more than the time provided in the Cox contract; that Brashear agreed with them that he would give them plenty of time for this purpose, and that they, as soon as the Heydrick assignments were procured and the survey of the land completed, demanded a deed from Brashear for the land, and offered to him the amount due him therefor under said contract, and that he refused and failed to make said deed to them. They allege that the appellee had full knowledge of the extension of the time by Brashear for the completion of the Cox contract

assigned to them, and of the fact that they were making abstract and survey of the land for the purpose of completing said contract. All these allegations are denied by appellee.

To dispose of this appeal, it will be necessary to decide the three following questions: (1) Were the Heydrick contracts valid and in force when assigned to appellants? (2) Was the North Fork Coal & Timber Company contract with Brashear valid and in force when assigned to appellee? (3) Did appellants exercise their option under the Cox contract in time to entitle them to specific performance by Brashear?

1. The Heydrick contracts were for a valuable consideration and bound Brashear to convey the land to Heydrick, and his assignees, upon demand and payment of the purchase price within one year, but did not bind Heydrick to take the land at any time. These contracts by their express terms, unless exercised within one year from date, were null and void, and were only options to purchase the land at a fixed price for a definite time, expiring on May 25 and 26, 1904, respectively, without force or effect thereafter. No effort was made by Heydrick or his assignees to exercise the option under these contracts for more than six years after their execution, until, on August 6, 1910, appellants procured assignments of them from Heydrick and notified Brashear they were going to take the property under same. Appellants, therefore, acquired no right under the assignments to them of these contracts. Heydrick v. Dickey, 154 Ky., 475, 157 S. W., 915.

2. The contract between Brashear and the North Fork Coal & Timber Company is exactly the same kind of a contract as the one between W. T. Campbell and said company, set out and construed in Chesbrough v. Vizard Investment Company, 156 Ky., 149, and was simply a listing contract revocable at any time by the grantor. See Chesbrough case, *supra,* and cases cited therein. The Cox contract was executed and recorded subsequent to the execution of this company's said listing contract, and the evidence shows written notice of revocation was at that time given to said company by Brashear.

It, therefore, results that the attempted assignment of this contract to appellee by said North Fork Coal &

Timber Company after the recordation of the Cox contract and notice of revocation to it was a nullity, and appellee acquired and had no enforceable rights thereunder.

3.   The M. Cox contract was executed by Brashear on April 26, 1910, and by. its terms was an option granting to Cox and his assignees the right to purchase the land in question here at the price of $11.00 per acre, provided said Cox made the survey to ascertain the exact number of acres in said boundary at his own expense, and exercised his option thereunder within three months from date thereof.  By the terms of the option Brashear obligated himself to convey a good and sufficient title to said land in the event the right to purchase, given thereunder to Cox, and his assignees, was exercised within the life of said contract, that is, on or before July 26, 1910.   This contract was for a valuable consideration and was binding upon the parties, and enforceable at the option of Cox or appellants, his assignee, if exercised by making a survey and paying the purchase money within the time fixed by the contract; and being for an interest in land and properly acknowledged was a recordable instrument, and having been recorded, appellee had notice thereof.

Appellants claim, and the evidence shows, that they were the owners of the Cox option, and before its expiration made a survey of the land at their own expense of about $200.00, and notified Brashear of their intention to take and pay for this land under said contract. The evidence further shows conclusively that Brashear, whose duty it was, under said contract, to clear his title, agreed orally with appellants that he would extend said option a sufficient length of time to permit them to procure assignments of the Heydrick contracts so as to. remove from the record what was considered by all the parties to be a cloud upon Brashear's title to the land; and then convey to them under either the Cox or Heydrick contract, but under which one is not clear.  In pursuance of this agreement appellants did procure on August 6, 1910, assignments to them of the Heydrick contracts.

Whether this verbal contract for an extension of the option was binding upon the parties for such time as was reasonably necessary to clear Brashear's title, presents a question of considerable difficulty, since under the evidence it is not clear. whether the parol agreement

simply extended the time of performance under the Cox contract or modified this contract. 20 Cyc., 287. However, it is not necessary to decide this question, because even if we assume that the option was extended thereby for a reasonable time, we do not think appellants availed themselves of the opportunity thus afforded them. Their own testimony shows that the survey of the land had been completed, and that they procured the written assignments of the Heydrick contracts on August 6, 1910. It then became their duty to pay Brashear for the land and complete the trade without further delay.

The evidence shows that Brashear was eighty-four years of age; that he had been making diligent efforts since 1903 to sell this land; that he was impatient of the delay, and anxious to collect the money; that he was insisting that appellants take the land and pay for it according to the contract, and that they were putting him off in an effort to complete a sale of the land at a profit to a party in Detroit, Michigan, so that he rather than they would furnish the money to pay Brashear; that after waiting on appellants for a month after they had procured the Heydrick assignments, Brashear on September 6, 1910, conveyed the land to appellee, and returned to appellants the $1,500 they had paid him.

It is true when Brashear conveyed to appellee, the party to whom appellants were attempting to sell the land was having prepared an abstract of the title thereto, and that he might have furnished the money within a few days to enable appellants to have completed their trade with Brashear, but Brashear was under no obligation to await that contingency. The Cox contract even if extended by the parol agreement until the assignments of the Heydrick contracts were procured, could not possibly be construed to give to appellants the further right to negotiate and consummate the sale of the land before they paid Brashear and took a conveyance from him. Appellants unquestionably lost all rights under the Cox option when they failed to make payment for the land immediately after they secured the Heydrick assignments on August 6, 1910; and upon the evidence before us here they would have been denied a specific performance by Brashear on September 6, 1910, the date upon which he conveyed the land to appellee.

Not being entitled to enforce specific performance by Brashear, it results, of course, that they could not enforce same against appellee, and that the Chancellor properly dismissed their petition therefor.

Wherefore the judgment is affirmed.