# Ross-Vaughan Tobacco Company v. Johnson.

## Ross-Vaughan Tobacco Co. v. Hussey.

## Ross-Vaughan Tobacco Co. v. Havener.

(Decided December 3, 1918.)

## Appeals from Ohio Circuit Court.

1. Contracts—Construction of—"At the Option of the Purchaser."—
A contract should be given a reasonable and practical construction. No technical rules should be allowed to defeat the intention of the parties. Where farmers sold their tobacco under a written contract stating the number of pounds and the price, and that it was to be delivered well cured and in good order "at the option of the purchasers at their factory in Hartford, Kentucky," the words "at the option of the purchasers" did not have the effect of destroying the contract for want of mutuality.

2. Contracts—Mutuality of—"At Option of Purchaser."—Where it appeared that the purchaser of a tobacco crop had several warehouses at which it received tobacco, the words in the contract, "at the option of the purchaser" would not have the effect of relieving the purchaser of the obligation to accept and pay for the tobacco if delivered at the specified warehouse.

3. Contracts—Must be Mutual to be Binding.—A contract to be binding must be mutual. One party can not be bound when the other has the option to accept or reject the contract.

4. Contracts—Option Contract—Definition of.—An option contract is not a contract for the purchase or sale of property but a contract giving the optionee the privilege of purchasing it if he elects to take it within the time stated in the option.

BARNES & SMITH and J. S. GLENN for appellant.

WOODWARD & KIRK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

These three appeals involving, except in one respect, the same question of law and fact will be disposed of in one opinion. The Ross-Vaughan Tobacco Company, a corporation, was engaged in 1916 in the business of purchasing, handling, shipping and selling tobacco, and in the conduct of its business established several houses in the counties of Ohio, McLean, Daviess, Hancock and Breckinridge, in which it received tobacco that it bought from the growers, in order that it might prepare the same for market.

In pursuance of its business it purchased from farmers, who were growers of tobacco in the various counties named, crops of tobacco, and the purchases so made were evidenced by written contract with each farmer. It appears that all of these contracts were printed forms with blanks left to be filled in writing with the date when the contract was made, the year the tobacco contracted to be sold was grown, the price to be paid for the different grades, the name of the place at which the tobacco was to be delivered and the name of the farmer selling the crop.

The following is a form of the blank contract that was used:

...........................................................................191...........

I have this day sold to Ross-Vaughan Tobacco Co., Incorporated, my present crop of Tobacco, the growth of 191.......... supposed to be.......................pounds, for which they agree to pay me as follows:

For Leaf free from Lugs          $................ per hundred lbs.
For Lugs free from Trash         $................ per hundred lbs.
For Leaf free from Lugs          $................ per hundred lbs.
For Lugs free from Trash         $................ per hundred lbs.
For Trash              at $................ per hundred lbs.
................................................ at $................ per hundred lbs.

Said tobacco to be delivered well cured and in good order and free from damage at the option of the purchasers at their factory in.................................................................

On November 16, 1916, the appellees, Ellis Johnson, D. N. Havener and S. J. Hussey, severally signed and delivered to the Ross-Vaughan Tobacco Company one of these contracts after the blank spaces had been filled in with writing specifying the date of the contract, the price to be paid for each grade of tobacco, and the place at which the tobacco was to be delivered, viz.: Hartford, Kentucky.

In January, 1917, each of the appellees having failed and refused to deliver the tobacco that he had sold by the contract before mentioned, these separate suits were brought against them by the Ross-Vaughan Tobacco Company. In its petitions it set up the contract, the failure and refusal to deliver the tobacco which it averred it was ready and willing to receive and pay for; that the defendants had sold or were about to sell the tobacco they had sold to this plaintiff, and had so notified it.

It further set out the damages it had sustained and asked an injunction restraining them from selling or disposing of the tobacco to any other person and that they be compelled by mandatory process to deliver the tobacco to it.

It further appearing that the circuit judge was absent from the county, a temporary restraining order was issued by the circuit clerk in each case in conformity with the prayer of the petition. Thereafter the defendants, without waiving their general demurrer to the petition, filed answers, in one paragraph of which the averments of the petition were traversed, and in the second paragraph it was alleged that the contracts were procured by a fraud, while in the third paragraph it was set up that the contract was void and of no effect because it did not bind the Ross-Vaughan Tobacco Company to receive or pay for the tobacco and was, in short, a unilateral contract.

When the cases came on for hearing the general demurrers filed to each of the petitions were sustained, the temporary restraining orders set aside and the petitions dismissed.

As the amount in each case is two hundred dollars but less than five hundred dollars, the Ross-Vaughan Tobacco Company has brought the cases here, asking that an appeal be granted and the judgments reversed, and as we have concluded that the appeals prayed should be granted and the judgments reversed, it will be necessary to write an opinion stating the grounds for reversal.

It will be observed that the contracts when the blanks were filled and the contracts signed by the farmers stipulated that the farmers had sold their crops of tobacco, specifying the number of pounds at a specified price per hundred pounds named in the contract and that they were to deliver the tobacco "well cured and in good order and free from damage at the option of the purchaser at their factory in Hartford, Kentucky."

That the tobacco company had warehouses in Hartford, Kentucky, at which it received tobacco and paid therefor, is not disputed, but it is contended in behalf of the appellees, as it was in the lower court, that the contract sued on was a mere option, since by its terms the tobacco company was not obliged to either receive or pay for the tobacco, and this being so, the contract was lacking in that mutuality of obligation upon each of

the contracting parties that is so necessary to constitute a valid and enforcible contract. Other questions are raised but this is the principal one.

It will be observed from an inspection of the contract that except for the use of the words "at the option of the purchaser" in the last clause, there would be no ambiguity in the contract. In other words, if this clause had read: "Said tobacco to be delivered well cured and in good order and free from damage at their factory in Hartford, Kentucky," there could not be any dispute as to its meaning. It is, however, insisted by counsel for appellees that the use of the words "at the option of the purchaser" left it at the option of the purchaser to either accept and pay for the tobacco or decline to receive or pay for it, and accordingly the contract was open to the fatal objection of binding the seller but not the buyer.

The rights of the parties are of course to be determined by the writing which constituted the whole contract between them, and unless this writing was mutually binding upon both of the parties it was not enforcible against either, because mutuality of obligation is essential to the validity of the contract.

As said by this court in Second National Bank of Ashland v. Rouse, 142 Ky. 612, "A contract, to be binding, must be mutual. One party cannot be bound while the other has the option to accept or reject its terms. The minds must have met, and the contract, to be binding upon one, must be such that the other is likewise bound." This being the applicable law, it only remains to be seen whether this contract was mutually binding upon both parties, or only intended to bind the seller, and not the purchaser.

The contract should be given a reasonable and practical construction. No technical rules should be allowed to defeat the intention of the parties. The farmers sold, the tobacco company bought, their crops of tobacco, and evidently it was contemplated, and so expressed in the writing, by both parties to the contract that the tobacco should be delivered by the farmers and paid for at the stipulated price by the tobacco company.

The words "at the option of the purchaser" should not be allowed to destroy the contract because manifestly they were not inserted for this purpose. If the farmers had delivered their tobacco, well cured, in good order, and free from damage, at the factory of the tobacco company in Hartford, Kentucky, and demanded

payment of the purchase price, we apprehend that no court would have held that the tobacco company was not bound by the contract to receive and pay for the tobacco, or have held that the tobacco company had the right to refuse to receive or pay for it although the farmer had complied with all the conditions imposed upon him.

In such a state of case if the purchaser had refused to receive the tobacco, we have no doubt that if it appeared, as it does in this case, that the purchaser had several warehouses in which it received tobacco, it would be ruled that the printed words "at the option of the purchaser" in the contract were inserted in the printed form so that the purchaser might, at its option, have the crop delivered at either of one or the other of its warehouses that were named in the writing in the blank left for the place of delivery.

To illustrate, if in the blank space following the printed words "at the option of the purchaser" there had been written the words "Hartford, Kentucky, or Owensboro, Kentucky," then the purchaser would have the right at its option to have the tobacco delivered to either of these places. Accordingly we think that the words "at the option of the purchaser" in the printed form were inserted in order to save writing in the event two places were fixed for the delivery of the tobacco. When only one place was fixed, the words "at the option of the purchaser" should have been erased, but the fact that they were not does not affect the intent or meaning of the contract that the tobacco was to be delivered at the place named. The case of Nolin Milling Co. v. White Grocery Co., 168 Ky. 417, relied on by counsel for appellees, we do not regard as applicable to the question here presented because in that case the determining question was, whether Chandler had authority to act for the Nolin Milling Company in a sale of flour made to the White Grocery Company, and the court held that he had not, and consequently the Nolin Milling Company had the right to reject the sale of flour made by Chandler.

In Rehm-Zeiher Company v. F. G. Walker Company, 156 Ky. 6, the court in considering the contract between the parties, which was very different from this, held that under its terms one of the parties had the right to excuse himself from performance, and therefore the contract not being mutual was not binding on either of them.

But this contract was not intended to be an option contract or an offer by the farmer to sell his tobacco to the tobacco company if it chose to take it. It has none of the earmarks of an option contract, which is a contract, not for the purchase of property, but a contract giving the privilege or option of purchasing it if the optionee within the time allowed elects to take it. Murphy, Thompson & Co. v. Reed, 125 Ky. 585; Elliott on Contracts, section 232.

On a return of the case, the right of the tobacco company to injunctive relief should be determined according to the principles laid down in Campbell v. Irvine Toll Bridge Co., 173 Ky. 313; Friedburg, Inc. v. McClary, 173 Ky. 579; American Snuff Co. v. Walker, 175 Ky. 149.

Wherefore, the judgment in each case is reversed for proceedings consistent with this opinion.