JEREMIAH M. HAYES *vs.* HARRY J. CLARK.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js.

A writing purporting to be a contract between its two signers, which upon its face and by its express terms appears to be obligatory upon one of them only, creates by implication a corresponding and correlative obligation on the part of the other, if it is manifest that such was the intention of the parties.

In the present case the owner of real estate, by a writing in the form of a contract, constituted as his sole agent for one year a real-estate broker to effect a sale of the premises at a specified price, and fixed his commission at two per cent of any offer accepted by the owner during the life of the contract; and both the owner and broker signed this writing. *Held* that by attaching his signature to this instrument the broker evidenced his intention to accept its terms, and thereby became bound, by implication, to use reasonable efforts to procure a purchaser of the property; an obligation which the trial court found he had faithfully discharged, and was therefore entitled to recover his commission.

Furthermore, even if the writing were to be regarded—as the owner contended—merely as an offer to enter into an agreement, the broker's prompt and persistent efforts, known to the owner, to find a purchaser for the property, would have constituted in law an acceptance of the offer, and thus have created a mutual contract with the same obligation upon the broker as that arising from his execution of the writing.

The defendant testified that he notified one of the employees of the plaintiff not to do anything further for the present about the sale, because he, the defendant, had heard that there was some question about his title to the premises. *Held* that this notification, which was not communicated to the plaintiff, fell far short of proving a revocation of the agency, as claimed by the defendant.

A by-law of the local real-estate board permitted property unsold for thirty days to be listed with all other members of the board. *Held* that while the plaintiff's omission to resort to this expedient was a circumstance to be weighed and considered by the trier in connection with all the other evidence in the case, it was not necessarily inconsistent with the conclusion that all reasonable efforts had been made by the plaintiff to find a purchaser for the property.

Submitted on briefs October 26th—decided December 22d, 1920.

ACTION by a real-estate broker to recover a commission upon the sale of defendant's property, brought to and tried by the Court of Common Pleas in New Haven County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

The plaintiff, in April, 1917, and thereafter, was a real-estate broker in New Haven, and the defendant was the owner of certain premises in New Haven known as No. 33 Pearl Street. On April 18th, 1917, the plaintiff and defendant executed an agreement in the following terms, which was delivered to the plaintiff. This paper was marked Exhibit A on the trial. In so far as relevant to the consideration of this appeal, it reads:—

"New Haven, Conn., April 18, 1917.

"Harry J. Clark, of New Haven, Connecticut, hereinafter known as the 'Owner' and Hayes & Allen of New Haven, Connecticut, hereinafter known as the 'Agent,' agree together as follows:—

"Said agent is hereby constituted the sole agent of the said owner for a period of twelve months (and thereafter until termination at the expiration of a ninety days written notice from the owner) to effect a sale at owner's price of $8,500, of the premises known as number 33 Pearl Street in the town of New Haven, County of New Haven, State of Connecticut, described as follows: The twelve-room two-family frame house on lot 50 feet by 140 feet. Said owner shall not employ, during the life of this contract, any other agent for this purpose, and shall report to said agent all offers received by said owner. Said agent shall receive two per cent of any offer accepted by the said owner during the life of this contract, whether the proposed purchaser is introduced to said owner by said agent or not. Said agent shall receive two per cent of said owner's price, if said agent reports a bona fide bid for that price, whether the

same is accepted or not. Said owner hereby agrees to convey by warranty deed, containing the usual covenants, the above described property free and clear of all incumbrances except leases as follows: . . .   Should the title to the property prove imperfect, in consequence of which the transaction cannot be completed, the agent is entitled to the full commission. Said agent is hereby authorized to accept a deposit of not less than $100 on any sale at said price and upon said terms, and to sign a receipt and contract therefor, provided, however, that said contract shall provide for the payment of the balance of the purchase price and the completion of the transaction on or before thirty days from the date the deposit is made.

HARRY J. CLARK, Owner.
HAYES & ALLEN,
By P. H. WEIL, Agent."

Extract from by-laws of New Haven Real Estate Board, printed on the back of Exhibit A:—

"Article XIII.

"Sale contracts.

"SECTION 1. The members of the Board shall, so far as practical, secure signed, exclusive contracts for the sale of property, and all places under contract, may, if unsold within thirty days, be listed with all other memuers of the Board.

"SEC. 2. All applications for inspection or negotiations for listed property by other members of the Board shall be conducted through the listing member."

The plaintiff alleged in his amended complaint that he "accepted the proposed agency and had expended time, effort, money and means, and was at the time of the sale hereinafter referred to, expending time, effort, money and means, in endeavoring to effect a sale of

the defendant's property, by advertising the same, by placing the same upon slips in his office, by bringing proposed customers to said property and showing them around said property, and said plaintiff has done his utmost in attempting to sell said property."

Immediately upon the execution and delivery of the agreement, plaintiff began making efforts to sell the premises, and at once advertised defendant's said property for sale in two New Haven newspapers in space regularly contracted for by him by the month, and also placed the matter of the sale in the hands of two of his employees, who also at once began efforts to find a buyer.

As a result of the advertising a number of persons called at plaintiff's place of business in reference to the sale, and were fully informed respecting the premises, and the attention of other persons who came to plaintiff's place of business, indicating their desire to purchase residential property, was called to said premises, and the terms of sale given to them.

In addition to the foregoing activities of plaintiff's said employees, each of them personally took two prospective buyers to defendant's premises, who made a personal inspection of the same with said employees of plaintiff, all of which the defendant knew, and one of said agents also took several customers to the premises who viewed them from the outside. "The plaintiff faithfully used all reasonable means and efforts to find a purchaser for defendant's property."

About two months after the execution of the agreement, Exhibit A, defendant notified plaintiff's agent, P. H. Weil, who had executed the agreement for the plaintiff, and who was one of plaintiff's said employees above referred to, to do nothing further for the present about the sale of the property and until defendant should notify him to go ahead, assigning to plaintiff's

said servant at said time, as a reason for desiring him to temporarily cease his efforts to make a sale of the premises, that he, the defendant, had been informed by his father that there was some question affecting his title to the premises. Said Weil thereupon ceased making any further efforts to sell said property and shortly thereafter left plaintiff's employ, without, however, notifying plaintiff, or any employee of plaintiff, of what defendant had stated to him.

The other said employee of plaintiff, however, continued his efforts in the manner indicated above, and endeavored to sell said premises up to the time that he learned that defendant had himself sold said property.

At the time defendant requested said Weil to defer his efforts to sell said premises until he should further notify him, and assigned as a reason that he had been informed by his father that there was some question affecting his title to said property, defendant did not state what said claimed defect was, nor was any evidence offered on the trial on said question.

On October 5th, 1917, defendant personally sold said property to one Julia A. Kinsella, of New Haven, for the sum of $8,000, without notice to plaintiff or any of his agents or employees.

Upon this state of facts, the trial court rendered judgment for the plaintiff to recover a commission of two per cent upon the price received by the owner.

*Prentice W. Chase* and *Ernest L. Averill*, for the appellant (defendant).

*Harry W. Asher*, for the appellee (plaintiff).

CURTIS, J. The defendant, the owner of certain real estate in New Haven, and the plaintiff, a real-estate broker, signed the agreement, Exhibit A, on April 18th, 1917. All the express undertakings in the written agree-

ment are made by the owner. The owner in the agreement gives the broker the exclusive right to sell the property for the term of one year.

The defendant claims that, under the facts, the terms of Exhibit A constitute merely an offer to contract, and that no acceptance of the offer has been established. The first clause of the agreement reads: "Harry J. Clark, of New Haven, Connecticut, hereinafter known as the 'Owner' and Hayes & Allen of New Haven, Connecticut, hereinafter known as the 'Agent,' agree together as follows:" The signature of the broker attached to Exhibit A, with the first clause thereof reading as above, establishes the fact that the broker intended thereby to accept the terms of the agreement.

The defendant urges that the express terms of the agreement include no promises on the part of the broker, and that the agreement therefore lacks mutuality or consideration, and is unenforceable. The defendant fails to appreciate that, under certain circumstances, written contracts bearing the signatures of both parties, which on their face and by their express terms appear to be obligatory on one party only, create a corresponding and correlative obligation on the other party by implication. This principle of law is stated as follows in Ruling Case Law (Vol. 6) p. 688, § 95: "Frequently it happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it is manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied." *Minneapolis Mill Co. v. Goodnow*, 4 L. R. A. 203 and note (40 Minn. 497, 42 N. W. 356); 1 Williston on Contracts, § 90; 1 Page on Contracts (2d Ed.) § 187. In the case of *Taylor Co.* v.

*Bannerman,* 120 Wis. 189, 97 N. W. 918, a written contract in these words was signed by both parties: "We hereby appoint the W. G. Taylor Co. of . . . our agents for Wisconsin and Illinois, and agree to sell them the following described stone [list of kinds and prices]. It is further agreed that the W. G. Taylor Co. are our exclusive agents for Wisconsin and Illinois, and we will quote no prices to others without their consent. This agreement is understood to be in force for the full term of one year from February 1st, 1899." The claim was made by the owners of the stone that the contract was void for want of mutuality, because the W. G. Taylor Company did not expressly bind itself to purchase any stone or do anything. The court held as to this claim as follows: "This position we deem untenable. The signature of the plaintiff's name to that paper was obviously for the purpose of acceptance. The presumption is that the signing was for some purpose, and no other is apparent. If an acceptance, it bound the plaintiff to perform any acts on its part necessarily implied either from those things which the defendants were bound to do or from the situation created by the contract. [Citing cases.] The plaintiff therefore bound itself to be the defendants' exclusive agent within the territory named, . . . and to perform the duties resulting from such agency. . . . These at least included good faith and due diligence in bringing the defendants' stones to the notice of possible consumers for the purpose of sale to them."

We will now consider the case at bar in the light of the law as outlined above. In the amendment to the complaint the broker alleges that he accepted the agency and entered upon its performance. This agreement falls within the class of written contracts signed by both parties, from which the obligation of one party (the broker) arises by implication from the terms of the agreement and the situation of the parties created

thereby, because it is manifest that it was the intention of the parties and the consideration upon which the owner assumed the express obligations of the agreement, that the broker should assume the corresponding and correlative obligations of a broker with exclusive right to sell for a period of one year. When the owner and broker signed the agreement, Exhibit A, an executory contract was made. The promises of the owner were expressed in the agreement. The promises of the broker were implied from the terms of the agreement and the situation of the parties created by it. The implied promise of the broker was that he would become the owner's broker with exclusive right to sell the property for one year, and perform the duties resulting from such an agency. These implied duties were that he would in good faith use reasonable efforts to procure a purchaser of the property. Reasonable efforts mean such efforts as are reasonable under the circumstances. Among the circumstances to be considered are the facts that the owner is to employ no other broker, and is to pay the broker employed a commission of two per cent if the owner accepts a purchaser from any source.

The court found in considerable detail the steps taken by the broker to procure a purchaser immediately after the execution of the agreement, and found that the broker "faithfully used all reasonable means and efforts to find a purchaser for the defendant's property." This finding accords with the subordinate facts and hence is conclusive. The broker, therefore, performed the promises implied from his entrance into the agreement, and is entitled to a commission of two per cent on the purchase price under the clause of the agreement which reads as follows: "Said agent shall receive two per cent of any offer accepted by the said owner during the life of the contract, whether the proposed purchaser is introduced to said owner by said agent or not."

Furthermore, under the facts found, if we disregard the fact that the broker signed the paper, Exhibit A, and consider it merely as an offer to enter into an agreement, then, since immediately after the delivery of Exhibit A to the broker, signed by the owner, the broker with the owner's knowledge faithfully used all reasonable means and efforts to find a purchaser for the property, this fact constitutes in law an acceptance of the offer and creates a mutual contract. *Schoemann* v. *Whitt*, 19 L. R. A. 599 note (136 Wis. 332, 117 N. W. 851); *Goward* v. *Waters*, 98 Mass. 596; *Dresser* v. *Gilbert*, 81 N. J. L. 358, 79 Atl. 1043; *Lapham* v. *Flint*, 86 Minn. 376, 90 N. W. 780; *Murphy* v. *Sawyer & Warford*, 152 Ky. 645, 153 S. W. 991; *Braniff* v. *Baier*, 101 Kan. 117, 165 Pac. 816. The obligation resting upon the broker by such an acceptance is the same as that stated above as arising by implication from his signature upon the written agreement, Exhibit A. The facts found by the court, that the broker "faithfully used all reasonable means and efforts to find a purchaser for defendant's property," entitles the broker to recover after an acceptance of the offer by acts, equally as after an acceptance by signature.

In addition to his claim that the contract was unenforceable because lacking mutuality or consideration, the defendant claimed that the contract, if a valid one, was revoked. This claim is based on the facts that about two months after the execution of the agreement the defendant notified P. J. Weil, the agent of the plaintiff who executed the agreement for the plaintiff, to do nothing further for the present about the sale of the property until notified to go ahead, because he, the defendant, had heard that there was some question affecting defendant's title to the premises; and that Weil thereupon ceased to make efforts to sell the property, and shortly thereafter left the plaintiff's employ

Hayes *v.* Clark.

without notifying the plaintiff of what the defendant had told him. Another employee of the plaintiff continued to make efforts to sell the property up to the time of the sale. These facts fall far short of proving a revocation of the plaintiff's agency.

The motion of the defendant, that the finding should be corrected so as to find in effect that the defendant revoked the agency, is denied. The evidence fully supports the finding.

The defendant further claimed, in effect, that it was not proven that the broker had in good faith used reasonable efforts to find a purchaser, because he did not list the property after thirty days with other members of the New Haven real-estate board under by-law thirteen of said board; and further that the broker's efforts must be shown to have been extraordinary efforts to entitle him to recover. The by-law, and the possibility of its use, were in evidence before the court, and there is nothing in the record to lead us to correct the finding in this or other particulars as the defendant desires, or to hold that the by-law was not properly weighed by the court in finding that the broker "faithfully used all reasonable means and efforts to find a purchaser for the defendant's property." We have stated that the promise implied by the broker's acceptance of the contract was that he would in good faith use reasonable efforts to procure a purchaser of the defendant's property. The promise thus implied is not that the broker would use extraordinary efforts. Extraordinary efforts, with its implication that there are recognized ordinary efforts on the part of brokers for comparison, is a too indefinite and impracticable standard of conduct for consideration.

There is no error.

In this opinion the other judges concurred.