MORTON S. HARRIS *vs.* MINNIETTA S. MCPHERSON
ET AL.

First Judicial District, Hartford, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

A writing signed by the owners of land which gives to a real estate broker "the exclusive sale" of the property at a stated price and commission thereon, followed by the expenditure of time and money by the broker in his efforts to procure a purchaser for the property, affords a sufficient basis for holding that as matter of law the offer contained in the writing had been so accepted as to create a mutual contract.

During the life of such a contract the owner has no right to sell the property to any purchaser not procured by the broker; and if he does so he is liable to the broker, who may recover, as damages, the commission agreed upon. (*Two judges dissenting.*)

A broker may, however, be given an exclusive agency, without thereby precluding the owner from his right to sell to a purchaser of his own procuring; and in this respect the two contracts differ materially.

In the present case the contract gave the "exclusive sale" of the property to the broker, but provided no time for its continuance. *Held* that the law would imply the continuance of the agency for a reasonable time, and that a sale made by the owners of the property before such reasonable time had expired, was a breach

Harris *v.* McPherson.

of the contract which entitled the broker to recover his commission as damages. (*Two judges dissenting.*)

A principal, with few exceptions, has *power* to revoke an agency at any time and thus terminate the agent's authority to bind him by his acts; but he has no *right* to do so if the exercise of such power violates a contract of employment. After such revocation he must respond to his employee in damages for such loss as the employee suffers during the life of the contract.

Argued October 5th, 1921—decided January 5th, 1922.

ACTION by a real-estate broker to recover a commission upon the sale of the defendants' property, brought to and tried by the Court of Common Pleas in Hartford County, *Dickenson, J.;* facts found and judgment rendered for the plaintiff for $466, and appeal by the defendants. *No error.*

*Alvan Waldo Hyde* and *J. Harold Williams,* for the appellants (defendants).

*Terry J. Chapin,* for the appellee (plaintiff).

CURTIS, J. The plaintiff, in March, 1918, and thereafter, was a real-estate broker dealing in property in Suffield and vicinity, and the defendants were owners of a suburban farm in Suffield. On March 11th, 1918, the defendants employed the plaintiff to sell the farm, and signed and delivered to him a written agreement (Exhibit A) in the following terms:—

Contract.

Suffield, Conn., 3/11/1918.

"This is to certify that on this date I have given to Morton S. Harris the exclusive sale of my property, viz: Six acres land more or less with all standing buildings thereon, for the sum of $8,000. (8,000.00) and do agree to pay the said M. S. Harris 5% of the purchase price at transfer of deed.

F. B. McPherson.
Minnietta S. McPherson."

The plaintiff accepted the employment under the agreement, advertised the property at his own cost, and incurred other expenses and spent time in interviewing and answering inquiries of prospective purchasers of the property, but did not produce a customer ready, able and willing to buy the land.

A few weeks later, before April 20th, 1918, the defendants sold the property, to a purchaser of their own procuring, for $8,000. Thereupon the defendants notified the plaintiff of such sale and withdrew the property from the plaintiff's hands. The plaintiff claimed his commission under the terms of the written agreement, but the defendants refused to pay it.

Upon the trial the defendants claimed that the writing signed by them and delivered to the plaintiff did not create a mutual contract, as it contained no promise by the plaintiff, and that the plaintiff was merely an agent employed to procure a purchaser, and as no purchaser had been procured by him, he was not entitled to a commission. The court overruled this claim.

The fact that the plaintiff, upon the receipt from the defendants of the writing, Exhibit A, used reasonable efforts to procure a purchaser for the property and expended money and time in so doing, constitutes a sufficient basis for the court's holding that in law there was such an acceptance of the offer contained in Exhibit A as created a mutual contract. *Hayes* v. *Clark*, 95 Conn. 510, 111 Atl. 781.

The defendants also claimed that, if a mutual contract arose by the plaintiff's acceptance, through acts, of the offer contained in this agreement, yet that such contract did not preclude the sale of the property by the defendants to a purchaser of their own procuring, without obligation to pay a commission to the plaintiff as damages for a breach of contract. In other words,

that the giving of the exclusive sale of property by an owner to a broker, at the most, gave him merely an exclusive agency.

In the law relating to the relations between the owner of real estate and a broker employed to procure a purchaser, there is a difference in the cases in interpreting a contract in which the owner gives the broker the exclusive sale of property. 9 Corpus Juris, 622; 4 Ruling Case Law, 318. There appears to be no diversity of view in interpreting a contract whereby the owner gives the broker an exclusive agency. Such a contract may be defined as follows: A contract employing a broker as an exclusive agent, is an agreement on the part of the owner that during the life of the contract he will not sell the property to a purchaser procured through another agent. This does not preclude the owner from selling to a purchaser of his own procuring. There are cases which define a contract by the owner giving a broker the exclusive sale of property, as giving him merely an exclusive agency as defined above. We are satisfied that the weight of reason and authority support the following definition of such a contract: A contract of the owner giving a broker the exclusive sale of property, is an agreement on the part of the owner that he will not sell the property during the life of the contract to any purchaser not procured by the broker in question. *Murphy* v. *Sawyer & Warford*, 152 Ky. 645, 153 S. W. 991. In the instant case, the contract with the broker gave him the exclusive sale of the property. Therefore a sale by the owner to a purchaser of his own procuring was a breach of contract if made while the contract was in force. The contract, dated March 11th, 1918, contains no provision as to its duration. Was it in force when the sale was made by the owners? The owner, in a contract giving a broker the exclusive sale of property,

makes the broker the only medium through which a purchaser can be procured during the life of the contract. The owner agrees, in such a contract, not only to exclude another agent, but also himself from procuring a purchaser. Ordinarily, in this class of contracts, the exclusive sale is given to the broker for a definite time. Where the duration of the contract is not specified, what is the life of the contract? It is to be observed that this contract is not one of a general agency employment, as that of a salesman; it is a contract to procure a purchaser for one specific piece of property, and is confined to the accomplishment of a particular transaction. The rule of law, that where there is a general employment of a servant with no provision as to the duration of the employment, the employment is at will and may be terminated by either party at any time without violating a contract, is not pertinent to an employment for the accomplishment of one particular transaction. In such an employment, the rule set forth in 2 Corpus Juris, 525, is the reasonable and just rule: "Where the agency is for the accomplishment of a particular transaction or specific purpose, the law implies its continuance for at least a reasonable time." *Ewart Lumber Co.* v. *American Cement Plaster Co.*, 9 Ala. App. 152; *Marquam* v. *Ray*, 65 Or. 41, 131 Pac. 523; *Turner* v. *Snyder*, 132 Mo. App. 320, 111 S. W. 858; *Wanstrath Real Estate Co.* v. *Wenz*, 185 Mo. App. 162, 170 Pac. 345. This conforms to the general principles as found in Williston on Contracts (Vol. 1) § 38; Page on Contracts (Vol. 2) § 1154; Pollock on Contracts (8th Ed.) p. 536. A reasonable time in this connection is, in effect, a definite time, to be fixed as a matter of fact by a court in case of controversy.

Under the ordinary so-called listing contract of employment of a broker to procure a purchaser where

the exclusive sale is not given, it is generally held that the employment may be terminated by the owner at will, and that a sale of the property by the owner terminates the employment. But it is clear that such an ordinary so-called employment of a broker does not consist so much of a contract as an offer, which does not ripen into a contract unless the broker procures a purchaser while the owner still holds the property. *Cadigan* v. *Crabtree*, 179 Mass. 474, 61 N. E. 37. Such an employment is called a mere listing contract. *Fields & Combs* v. *Vizard Investment Co.*, Anno. Cas. 1918D, 336 (168 Ky. 744, 182 S. W. 934). So it was held that such a listing contract does not give the broker a reasonable time to procure a purchaser, but that he could be dismissed at any time. *Cadigan* v. *Crabtree, supra.* In the case of a mere listing contract with a broker to procure a purchaser of property, the sale of the property by the owner revokes the agency without notice to the broker. Mechem on Agency (2d Ed.) § 619; Walker, Real Estate Agency, § 15; 4 R. C. L. 254.

In dealing with cases of contract for the exclusive sale, the distinction between the power of the owner to revoke the broker's authority, and the owner's right to terminate the contract of employment, must be carefully observed. Mechem on Agency (2d Ed. Vol. 1) in § 568, deals with this matter as follows: "Distinction may be made in these cases between the *power* to revoke and the *right* to revoke; the principal always having the power to revoke but not having the right to do so in those cases wherein he has agreed not to exercise his power during a certain period. If, in the latter case, he does exercise his power he must respond in damages. The same conclusion may also be reached in other cases by distinguishing between the *authority* and the *contract of employment.* The authority may be

withdrawn at any moment, but the contract of employment cannot be terminated in violation of its terms, without making the principal liable in damages." The owner's power to revoke the broker's authority so that the owner will not be bound as to a third party by the broker's act after revocation, is most extensive. Subject to certain exceptions not pertinent to this case, this power has been stated as follows: "The principal has absolute power to revoke an agency at any time, at his mere option, either with or without reason, and thereby terminate the agent's power and authority to bind the principal by any further acts. This power to revoke . . . is not at all affected by the fact that there is an express or implied contract between the agent and principal that such agency is irrevocable, or that the employment . . . shall continue for a specified time, or . . . that the authority was conferred for a consideration, or that the agent has incurred expense in or about the business of the agency. . . . The only effect of such stipulations is to give the agent a cause of action against the principal for wrongful revocation in breach of such contract." 2 Corpus Juris, 527–529.

The ordinary listing contract with a broker to procure a purchaser, presents a far different situation from that presented by a contract between the owner and the broker wherein the owner agrees to give the broker the exclusive sale of the property, and in consideration thereof the broker enters into such agreement as is set forth in *Hayes* v. *Clark*, 95 Conn. 510, 111 Atl. 781. The owner, in such contract, agrees not to sell the property during the life of the contract except through the broker, thus excluding a sale through his own efforts. If the owner in such a contract revokes the agency, or sells through his own efforts during the life of the contract, he breaches the contract, and the broker is entitled to recover damages for the breach.

Harris *v.* McPherson.

Applying the foregoing principles of law to the instant case, we have a contract whereby the defendants (owners) give the plaintiff (agent) the exclusive sale of a particular piece of property for a reasonable time. The trial court by its judgment found that the reasonable time which this contract was to endure had not expired in April, 1918, at the time of the sale by the owner. That finding was as definite as the court was required to be under the circumstances, although under the facts found, it would seem that it could reasonably have been found that the reasonable time involved would have extended a considerable period beyond April, 1918. Under the law as stated above, the owners in this case had the power to revoke the plaintiff's agency by notice, or by the sale of the property on April 20th, 1918, but, under the facts, they did not have the right to terminate the contract by such revocation, as the reasonable time for its duration had not expired. The owners, therefore, by their conduct breached their contract with the plaintiff, and he has a right of action against them. In this action by the broker against the owners, he is entitled to recover his commission as damages for breach of the contract, if during the reasonable time that was the life of the contract the owners sell the property to a purchaser procured by their own efforts, or by other agents, or if the plaintiff during such period produced a customer ready, able and willing to buy the property. 9 Corpus Juris, 622. The owners sold the property during the life of the contract, thereby breaching the contract, therefore the plaintiff was entitled to recover his commission as damages for the breach.

There is no error.

In this opinion WHEELER, C. J., and GAGER, J., concurred.

BEACH, J. (dissenting).  I can find no authority in
the books for the rule announced in the opinion, that
an employment of a broker for the accomplishment of
one particular transaction does not fall within the gen-
eral rule of agency that "where the contract of employ-
ment does not expressly or impliedly specify the time
during which the agency shall continue, the law pre-
sumes that it shall last as long as both parties desire,
and terminate at the will of either party."  2 Corpus
Juris, p. 525.  It seems to be assumed that an employ-
ment of a real-estate broker for a particular purpose,
implies a promise not to terminate the employment
until a reasonable time has elapsed for the accomplish-
ment of the purpose.  That such is not the law is ap-
parent from the fact, necessarily conceded in the opin-
ion, that an employment of a broker to find a purchaser
for a particular property may, unless limited in point
of time, rightfully be revoked at any time before a
customer is found, provided the revocation is in good
faith and not for the purpose of depriving the broker
of a commission virtually earned.  In explanation of
this apparent contradiction, it is said that the employ-
ment of a broker under an ordinary listing contract
"does not consist so much of a contract as an offer,
which does not ripen into a contract unless the broker
procures a customer while the owner still holds the
property."  From this proposition also I dissent.  An
employment of a broker—on any terms—necessarily
creates a contractual relation based on offer and ac-
ceptance.  *Hayes* v. *Clark*, 95 Conn. 510, 517, 111 Atl.
781.  In my opinion the case of *Cadigan* v. *Crabtree*,
179 Mass. 474, 61 N. E. 37, does not support the prop-
osition stated in the opinion.  It does state the very
different legal proposition, which is just as true of the
contract in suit as it is of an ordinary listing contract,
that the owner's promise to pay a brokerage commis-

sion is in the nature of an offer contingent on the broker's success; but it expressly bases the right of the owner to put an end to the broker's employment, not on the character of the employment in that case, but broadly on "the nature of a brokerage commission," in that it is dependent on success and is in no way dependent upon, or affected by, the amount of work done by the broker;—differing in that respect from the ordinary employment of labor. pp. 480, 481.

So, also, the rule as stated in Corpus Juris and elsewhere applies generally to an employment to sell, as well as to an employment to find a customer, and without reference as to whether the employment is exclusive or not. "Thus where the contract of employment specifies no time during which the broker's authority to sell, or to negotiate for a [contract of] sale, shall continue, the authority is subject to revocation at any time before a sale is made, or a customer found who is ready, willing, and able to purchase on the required terms, without liability on the part of the owner to the broker, save under exceptional circumstances." 9 Corpus Juris, p. 520; 4 R. C. L. p. 254; 1 Mechem on Agency (2d Ed.) § 563 *et seq.* In this case there are no exceptional circumstances, for the plaintiff made no promises except the usual implied promise to use reasonable efforts to secure a purchaser for the property. *Hayes* v. *Clark*, 95 Conn. 510, 111 Atl. 781.

The sale of the property by the defendants operated as an effectual revocation of the plaintiff's authority to sell it over again. Huffcut on Agency (2d Ed.) p. 79. Irrespective of notice his authority was gone. It may be conceded that if the plaintiff, after the sale and before notice of it, had done anything which entitled him to compensation under the contract, or had been at any expense in ignorance of the revocation, the defendants would be liable to that extent. But no such facts

are found.   What happened was that about April 1st the plaintiff, in answer to an inquiry, told the defendants he was "waiting for the weather to break before trying to sell it"; shortly before April 20th the defendants sold the property to a customer not interested by the plaintiff, and shortly after April 20th, notified the plaintiff that it had been sold.   In the meantime no compensation had been earned.   "If the revocation of the agency be not a breach of the contract, as where the agency is at the will of the principal, . . . no damages can be recovered, but only compensation for services . . . rendered." Huffcut on Agency (2d Ed.) p. 98.

Up to this point it has been assumed that the contract deprived the plaintiff of the *jus disponendi;* but I think the phrase "exclusive sale," as applied to the authority of a real-estate broker, is ambiguous, not only in law (9 Corpus Juris, p. 528), but also in common speech; and when contained in a simple contract of employment devoid of any unusual promises by the broker, ought not to be interpreted as conferring an unusual authority upon him, especially when, as in this case, it is found in a printed form prepared by the broker and submitted to the owners for signature.

In this opinion BURPEE, J., concurred.