## Bryant and Brother v. Reamer.

(Decided November 27, 1925.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Upon Offer of Performance of Contract Calling for Drilling of Wells, Contract Became Mutually Binding and Enforceable.—Where plaintiffs loaned defendants $100.00 in consideration of contract whereby defendant was to furnish plaintiffs

with four wells to drill at stipulated price, upon plaintiffs' offer to perform their side of contract, contract became mutually binding and enforceable and plaintiffs entitled to damages for breach.

2. Set-Off and Counterclaim—Creditor Can Offset Debt of Partnership Against What it Owed One of Partners Individually.—Even though partner did not guarantee partnership contract individually, other party to contract would be entitled to offset against him individually debt which partnership owed them on such contract.

3. Set-Off and Counterclaim—Unliquidated Claim May be Set Off Against Claim of Insolvent Nonresident.—Where plaintiffs had purchased drilling machine and had given notes, part of which were payable to defendant, who had later become nonresident and was insolvent, plaintiffs had right to set off, against what they owed defendant on notes, claims against defendant for damages for breach of contract, even though claim was unliquidated.

HARPER & DENTON and GOAD & GOAD for appellants.

DENHARDT & HUNTSMAN and W. D. GILLIAM for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In June, 1921, the appellants, M. M. and H. K. Bryant, were engaged as partners in the business of drilling oil wells in Allen and adjoining counties. They had a short while previous bought from the Armstrong Manufacturing Company an oil rig in which the appellee, E. C. Reamer, had an equity. This rig had formerly belonged to Reamer, but he had been unable to complete his payments for it to the Armstrong Manufacturing Company from whom he had bought it. When the Bryants purchased the rig, it was agreed between them, Reamer and the Armstrong Manufacturing Company, that they would execute their notes in the total sum of four thousand odd dollars to the Armstrong Manufacturing Company, and that after they had paid on these notes the balance due the Armstrong Manufacturing Company from Reamer, an amount slightly in excess of $2,000.00, the remaining notes should then be delivered to Reamer for his equity in the rig. This equity turned out to be the sum of $1,846.69.

On June 20, 1921, M. M. Bryant for his partnership turned over to Reamer the sum of $100.00, and Reamer thereupon executed and delivered to Bryant the following writing:

"On or before July 10th we are due M. M. Bryant and Brother, of Scottsville, Ky., one hundred

dollars ($100.00) together with a signed contract covering the drilling of four wells on the — Calvert leases in Allen county, said contracts to carry the rate of $2.50 per drilling foot, and to be signed and carried out by the DeSeay-Kentucky Oil Company.

"We agree to put up at least one thousand dollars in escrow with the First National Bank of Scottsville to cover the drilling of the first well on or before the above date, and to place in escrow with said bank additional funds to. drill each of the remaining wells before finishing the drilling of each preceding well.

"The DeSeay-Kentucky Oil Co.
ᴵCarl DeSeay, President.

"Guaranteed by Carl DeSeay & Company, Carl DeSeay, President, E. C. Reamer, Sec'y."

The parties differ sharply as to the nature of this transaction. The evidence of the appellants, consisting of the testimony of the two Bryants and Henry Cassiday, shows that Reamer represented to them that the DeSeay-Kentucky Oil Company and the Carl DeSeay Company were each a partnership composed of himself and Carl DeSeay, engaged in the business of developing oil leases; that M. M. Bryant advanced to Reamer for these partnerships the $100.00 in question as a loan and that in consideration of the use of this money from June 20th to July 10th Reamer executed for himself and the partnerships the contract set out in the paper hereinbefore referred to. Appellants' evidence further shows that although the contract in question was not guaranteed by Reamer individually, the failure of Reamer to do so was occasioned by his fraud, since it was fully understood and agreed that he was to guarantee this contract individually. Appellants say that otherwise they would not have lent the money or taken the contract in question, since they knew nothing of the financial standing of the partnerships or their members, but they did know they would ultimately owe Reamer a goodly sum of money and if he personally guaranteed this contract and failed to make good his guaranty, they could retain what they owed him and so secure themselves. Appellants also testify that they never noted Reamer's failure to guarantee this contract individually until just before this suit was brought.

On the other hand, Reamer testifies that the DeSeay-Kentucky Oil Company was not a partnership or ever an existing firm, but only a proposed syndicate which never

came into existence; that appellants knew this and advanced the $100.00, not as a loan to any one, but as a contribution towards the expense of organizing this syndicate; that the so-called contract in question was conditionally executed, as appellants knew and understood; that it was to have no validity until and unless the syndicate was finally organized and declared operative, which it never was, and hence the obligation to repay the $100.00 and to give appellants the contract to drill four wells never arose. Reamer also denies that he ever agreed to guarantee this contract individually. However, the many admissions he made on cross-examination convince us that the appellants' version of this whole transaction is the correct one.

After July 10th, the evidence overwhelmingly shows, although appellee denies it, that appellants continually called upon Reamer individually and as representing the various companies, whose names were appended to the contract, to designate the places where he or they wished the first well drilled under the contract and also to deposit the $1,000.00 in escrow as therein provided. Appellee kept putting them off, assuring them that within a short while all would be ready for them. Relying on such assurances appellants kept a drilling rig in idleness all during the summer. The evidence shows that appellants were ready, able and willing to go ahead, that they offered to do their part time and again, but that Reamer failed or refused to do a single thing set out in the contract before referred to.

In the fall of 1921, having then paid the Armstrong Manufacturing Company all the company was to get on the notes they had executed for the oil rig purchased from it and Reamer, appellants brought this suit to enjoin the Armstrong Manufacturing Company from turning over the remaining notes to Reamer who had then become and has ever since been a nonresident of this state and from this evidence insolvent. In the meantime the DeSeay and Company partnership had been dissolved and wound up. In this suit the Bryants also asked damages for the breach of the contract occasioned by the failure to permit them to drill the four wells mentioned therein; for a judgment against Reamer on his guaranty, and finally prayed that this judgment be offset against any amount they owed Reamer on the notes for the oil rig. By answer, counterclaim and set-off Reamer

asked judgment on these notes in the sum of $1,846.69, which is admitted to be their amount. The lower court gave the appellants judgment in the sum of $100.00 for the money loaned, offset this on the notes, dismissed the balance of their claim and then gave Reamer judgment in the amount of the notes and interest less the $100.00 mentioned. From this judgment the appellants bring this appeal.

We are not advised by the record as to the reason of the lower court for its action in dismissing the appellants' petition except in so far as the $100.00 was concerned, but it is stated in brief of counsel for appellee that the lower court was prompted to do so because it was of the opinion that the paper relied on as a contract herein was unenforceable in that the Bryant brothers were not bound to do anything under it; that it only obligated the DeSeay-Kentucky Oil Company and the guarantors to do the things therein set out, but that Bryant brothers were free to drill the wells or not, just as they chose; and that this being true, the contract was invalid due to lack of mutuality. We think the court erred in the view it took of the paper and what happened in connection therewith. The evidence establishes that the Bryant brothers advanced the sum of $10.00 in consideration of which Reamer, on behalf of the various companies, whose names were appended to this document, and himself executed the same. The paper was in the nature of an option running to Bryant brothers, given for a valuable consideration, and whereby the Bryant brothers had the right to demand not only the repayment of their $100.00, but also a contract for the drilling of four wells on the terms and conditions set out in this writing. In the case of Ross-Vaughan Tobacco Co. v. Johnson, 182 Ky. 325, 206 S. W. 487, this court defined an option contract as one not for the purchase of property but a contract giving the privilege of purchasing it if the optionee within the time allowed elects to take it. To the same effect are Murphy, Thompson & Co. v. Reid, et al., 125 Ky. 585, 101 S. W. 964; Fields & Combs v. Vizard Inv. Co., 168 Ky. 744, 182 S. W. 934; Asher v. Roberts, 206 Ky. 186, 266 S. W. 1089. The option before us is in stock exchange parlance a "call." The Bryant brothers by lending the money had a "call" on the parties to this option for a contract for four wells. If they elected to make such call—and that they did elect and made their election known is plain— then these parties became bound to furnish the contract

for the four wells as the paper sets out. By electing to call for such contract, appellants thereby became bound to the performance of their side of such contract and to the drilling of the wells. The option was valid and given for a valuable consideration. The optionee having called for performance and offering to perform his side of the contract, the contract became mutually binding and enforceable. It is, therefore, clear that the appellants were entitled to a judgment for their damages, arising out of the breach of that contract occasioned by the parties thereto failing or refusing to let the appellants drill the four wells, which damages amount to $2,000.00, as the evidence shows without contradiction.

Although it satisfactorily appears that Reamer agreed to guarantee this contract individually, but through fraud and mistake failed to do so and that appellants are entitled under their pleadings to a judgment against him individually on his guaranty, one of the partnerships on the contract having never existed and the other having been dissolved and wound up insolvent, yet even if Reamer did not agree to guarantee the contract individually, appellants would still be entitled to offset, against what they owe him individually, a debt which Carl DeSeay and Company, a partnership of which he was a member, owes them. In Owsley v. Bank of Cumberland, 66 S. W. 33, this court held that a bank might apply the individual deposit of a depositor to the payment of a debt which it holds against a partnership of which the depositor is a member, or may when sued for such deposit plead the firm debt as a set-off. This court pointed out in that opinion that, although it was the well settled rule of pleading under the common law that an individual demand could not be set off against a joint demand nor a joint demand against an individual demand, yet this rule had been abolished in this state by the adoption of our Civil Code. After citing and quoting sections 26 and 27 of this Code, this court said that the bank could have sued the depositor alone for the debt due it by the firm of which he was a member, and it necessarily followed that when the bank was sued by the depositor to recover an individual demand it could plead by way of set off to his demand the indebtedness of the firm of which he was a member. The damages due appellants in this case could be collected from the partnership of DeSeay and Company consisting of DeSeay and appellee, Reamer. The appellants could have sued Reamer alone

for this damage and, therefore, they have the right to set off against this claim anything they may owe Reamer. Although appellants' claim in this case was unliquidated, yet as Reamer was a nonresident and insolvent they had the right to use it as a set off against what Reamer owed them. Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24; Abernathy & Pinegar v. Meyer-Bridges Coffee & Spice Co., 100 S. W. 862.

For the reasons above set forth, the lower court erred in dismissing the appellants' petition as it did. It should have entered judgment against Reamer in their favor in the sum of $2,100.00, being the $100.00 loan and $2,000.00 damages for the failure to let them drill the wells, and should have offset this judgment against the amount due from appellants to Reamer on their notes. For failing so to do the judgment in this case is reversed, with directions to the lower court to enter a judgment in conformity with this opinion.