SOUTH FLORIDA FARMS COMPANY, A CORPORATION, *Plaintiff in Error*, v. D. W. STEVENSON, *Defendant in Error*.

Opinion Filed May 5, 1922.

In an action where the declaration alleges that the plaintiff had an exclusive contract for the sale of defendant's lands, and it appears that some of the lands were sold by the plaintiff, and other portions of the lands were sold by the defendant, and the plaintiff had no part in such sales, the plaintiff may recover stipulated commissions for lands sold by him, but not for lands sold by the defendant in which latter sales the plaintiff had no part.

Opinion Filed August 16, 1922 on rehearing.

1. Where liability is shown and verdict and judgment are rendered for an excessive amount, and the court can satisfactorily determine from the record the amount of the excess or the amount properly recoverable whether in tort or contract, the court may authorize a remittitur of the excess as an alternative for a reversal.

2. If an action is *ex contractu* on items that are severable, and on appropriate issues liability is shown as to some and not to other items, a remittitur may be permitted.

3. Where the judgment, or the verdict on which the judgment is based, is in excess of the damages proved and the evidence clearly shows the amount for which judgment should have been rendered, the judgment may be affirmed on condition that plaintiff remit the excessive part of his recovery. But where liability of the defendant is not clearly shown, a remittitur will not be awarded. In directiing that a remittitur be entered for a stated amount upon a verdict awarding damages, and that upon failure to do so a new trial be granted, the court, whether trial or appellate, does not usurp the functions of a jury or deny to either party a right to a jury trial.

4. Section 4 of the Declaration of Rights of the Constitution provides that "right and justice shall be administered without sale, denial or delay;" and when by due course of law, a severable portion of a claim or demaand has been proven under such issues that could not have prejudiced the defendant as to the severable portion of the claim or demand that has been clearly and fairly established, such established portion should be enforced by appropriate procedure of remittiture or otherwise, in order that "right and justice shall be administered without * * * delay," when the remainder of the plaintiff's claim or demand is not duly proven or is shown to be untenable.

A Writ of Error to the Circuit Court for DeSoto County, George W. Whitehurst, Judge.

Affirmed if remittur is entered.

*Leitner & Leitner, Mabry, Reaves & Carlton,* and *Myers & Myers,* for Plaintiff in Error;

*Treadwell & Treadwell, E. J. L'Engle* and *J. W. Shands,* for Defendant in Error.

WHITFIELD, J.—In an action on a contract the plaintiff was awarded a verdict and judgment for the full amount of his claim and the defendant took writ of error.

The contract consists in two letters as follows:

## "COPY

"Moore Haven, Florida.
"July 10th, 1919.

"Mr. D. W. Stevenson,
"Moore Haven,

"Dear Mr. Stevenson:

"It is my understanding of our arrangement of today, that at the earliest convenient moment, surely by August first next, you are to assume the possition of Manager of this Company, in connection with your present engagements elsewhere, that your salary for this purpose shall be $250. per month, that your duties shall consist of the entire control of all the business of the Company of every character in Moore Haven and the Moore Haven office together all the employees but excluding the Company books, that are to be continued with the present arrangement in Miami.

"That you are to make reports of progress at reasonable intervals to the Company President and to no one else. That the moving consideration for this arrangement is not only the management of the Company routine business but also the disaposal of all the Company holdings outside of the town of Moore Haven which consist of about 52,000 acres of land in Lee County and about 30,000 unsold acres in De-Soto County. It is agreed to by us that we will accept an average price of Twelve Dollars net per acre for the Lee

County land, and Twenty-one Dollars net for the DeSoto County land, no deduction or commissions off to anyone but yourself.

"That if within two years from August 1st, 1919, this entire unsold acreage is sold to net the above figures to this Company, and on terms acceptable to us, you are to receive from us a commission of five per cent. If all the lands in either but not both counties is sold, your commission shall be two and one half per cent. This arrangement to hold good on any excess price which may be obtained, the prices mentioned herein being the absolute minimum.

"If neither of the Company holdings are disposed of in full, the entire commission falls and the salary mentioned above is to be your full compensation. In any event the commission is to be figured on what is sold after August First, 1919, and not to apply on anything sold prior to that date, nor to any personal property such as machinery, etc., sold, nor to any land or buildings in the townsite of Moore Haven.

"If this accords with your understanding of the matter, will you please write me to that effect.

"With best wishes,

"Very truly yours,
"South Florida Farms Co.
(Signed)            "By Clarence M. Busch, Pres.
"Moore Haven, Florida.
"July 12, 1919."

"Clarence M. Busch, President,
"South Florida Farms Company,
'Miami, Florida.

"Dear Sir:

"Replying to your letter of July 10th, outlining an

agreement between us covering the basis of my connection with your Company, will say that it is in accord with my understanding, therefore I am able to concur therein.

"Yours very truely,

(Signed)                              "D. W. Stevenson,

"Cashier."

By the terms of the letter contract the "moving consideration" for the employment of the plaintiff was "not only the management of the company routine business but also the disposal of all" the specified lands of the defendant company as stated in the letter of its president.

The monthly salary agreed to be paid the plaintiff was compensation for his management of the defendant company's routine business in Moore Haven. Such management gave the plaintiff the use of the defendant company's facilities in making sales of the lands as contemplated, and the separate compensation for sales where made as specified afforded incentive for alertness and activity by the plaintiff. The agreement clearly contemplated the payment of commissions to the plaintiff only upon sales of lands actually made through the plaintiff's activities. This did not deprive the defendant of the right to sell its own land, or entitle the plaintiff to compensation for sales made by the defendant company in which sales the plaintiff had no part. The plaintiff's employment began in July or August and was terminated in the following December. The action is brought not for a breach of the contract of employment but for commissions on sales of lands including sales in which the plaintiff did not participate as well as those made by him.

The declaration alleges that under the plaintiff's employment he "had an exclusive contract for the sale of" de-

fendant's lands, but that defendant sold part of the land while the plaintiff sold the other portion except 800 acres which he could have sold to the same purchasers at $25.00 per acre had not defendant reserved the 800 acres. Plaintiff claimed a commission on all the sales of all the lands referred to in the letter contract, though he testified that he had no part in selling the lands sold by the defendant comprising all the lands in Lee County and 6,500 acres in DeSoto County, but did sell the other lands at $25.00 per acre and could have sold at the same price, 800 acres that were reserved from the sale made by plaintiff and afterwards sold by the defendant. As the alleged exclusive right of the plaintiff to sell did not deprive the defendant of its inherent right to sell its own land, (Wiggins v. Wilson, 56 Fla. 346, 45 South, Rep. 1011, and as the plaintiff had no part in the sales made by the defendant, the plaintiff is entitled only to commissions on sales he made, including the 800 acres he could have sold with the other sales made by him at $25.00 per acre, the commissions to be at the rate of 5% since the entire acreage in the two counties was "sold to net the big figures to the company" as stated in the employment contract. This view is sustained by a consideration of the entire record.

Reversed.

ELLIS, J., concurs.

WEST, J., specially concurs in decision.

BROWNE, C. J., AND TAYLOR, J., dissent.

WEST, J., concurring.

The controlling question in this case is the construction of the contract set out in the opinion. It was construed in the court below as giving to defendant in error the exclusive right of sale of the property described for the period stated and judgment upon the verdict for the amount claimed was entered accordingly.

There is a recognized distinction between the meaning of the terms "exclusive sale" or "exclusive right to sell" and "exclusive agency" to sell real estate. Harris v. McPherson (Conn.) 115 Atl. Rep. 723. The contract of an "exclusive agency" to sell does not obligate the owner to pay a commission where he himself sells to a purchaser not procured by the agent. Smith v. Preiss, 117 Minn. 392, 136 N. W. Rep. 7; Roth v. Thomson, 40 Cal. App. 208, 180 Pac. Rep. 656. Even in a case in which the agent was given "exclusive sale" of the property, it was held that the owner was not inhibited from selling, during the life of the contract, to a purchaser not procured by the agent. Roberts v. Harrington, 168 Wis. 217, 169 N. W. Rep. 603. But upon this point there is conflict in the authorities, some courts holding to the contrary. Murphy v. Sawyer & Warford, 152 Ky. App. 645, 153 S. W. Rep. 991; Hayes v. Clark, 95 Conn. 510, 111 Atl. Rep. 781.

In some jurisdictions it is held that a contract which stipulates a definite time within which a sale may be made implies an exclusive right to sell and that the owner cannot himself make a sale of the property within the time agreed without becoming liable to the agent for breach of the contract. Blumenthal & Co. v. Bridges, 91 Ark. 212, 120 S. W. Rep. 974, 24 L. R. A. (N. S.) 279. In others it is held that authority to sell within a specified time, or at any time before notice of withdrawal of authority to sell, does not give to the agent the "exclusive agency" or the

exclusive authority to sell for the period agreed and that
the owner may himself, or through some other agency,
effect a sale within such time without becoming liable to
the agent for commissions.    Hammond v. Mau, 60 Wash.
204, 124 Pac. Rep. 377, 40 L. R. A. (N. S.) 1142; Hennings
v. Parsons, 108 Va. 1, 61 S. E. Rep. 866.

Under the terms of the contract in this case the agent was
to "assume the position of manager of" the business of the
owner in connection with his "present engagements else-
where."    For this service he was to receive a salary of
$250 per month, a sum presumably commensurate with the
service to be rendered.    It is true that the "moving con-
sideration" was not only the management of the business of
the owner, but "the disposal of all the company's hold-
ings," with certain exceptions, consisting of large acreages
of land mentioned in the contract, and it was stipulated
that if such lands were not within the two-year period stat-
ed disposed of in full no commission was to be paid and the
salary mentioned was to be full compensation.    But no-
where is it provided in the contract that the owner, dur-
ing such period, was precluded, without becoming liable to
the agent for commissions, from making sale of the prop-
erty, and when it is considered that the agent bound himself
to do nothing in the way of making an effort to effect a
sale, or to devote any time to or incur any expense in the
effort, it is difficult to find in the contract any considera-
tion moving the owner to surrender the right which it pos-
sessed, in the absence of a valid contract to the contrary,
of itself making sale of its own property without becoming
liable to the agent for commissions.

It is argued that because the owner did not reserve to it-
self in the contract the right to sell the property during the
life of the contract, it should be construed as inhibiting the

owner from doing so and as conferring upon the agent the exclusive "disposal," or what amounts to the same thing, the right to demand and recover the amount of the commissions stated in case of a sale by any one during such period. But this is equivalent to saying that because it did not expressly reserve it, the owner will be presumed to have granted a valuable right, namely the right to dispose of its own property. The rule is the other way. In Roberts v. Harrington, supra, in considering a contract which in express terms gave to the agent the "exclusive sale" of real estate, when a somewhat similar contention was made, the court said: "Does a contract giving the 'exclusive sale' of real estate to another preclude the owner from selling while the contract is in force. It is true the words will technically bear that construction. But when we stop to reflect upon the situation of the parties and the object sought to be attained as well as the content of this contract, we should not give it that construction, unless the language is so clear and unambigous as not to bear any other." The contract in that case purported in express terms to give to the agent the "exclusive sale" of the property involved. There is no such language in the contract which we are considering.

In Ingolds v. Symonds, 125 Ia. 82, 99 N. W. Rep. 713, the court said: "The right of an owner to sell his own property is an implied condition of every contract of agency, and, unless expressly negatived, will prevail."

In 4 R. C. L. p. 259 it is said that "in accordance with the weight of reason and authority it is generally held that a broker has neither an exclusive right, nor an exclusive agency, to sell, even though he is employed for a definite period of time, unless he is granted either one or the other in unequivocal terms to that effect; and in the absence of

such an express grant the employer may sell independently, either through his own efforts or those of another.''

Applying this rule, and especially in view of the doubtful consideration to the owner, the contract involved in this case should not, in my opinion, be so construed as to require plaintiff in error, the owner, to pay defendant in error, the agent, commissions upon portions of the land sold by it and with which sales it is admitted he had nothing to do.

There is no question of bad faith.    It is simply a question of the construction of the contract.

BROWNE, C. J. Dissenting.

The proper determination of this suit depends on the construction of a contract of employment entered into between the plaintiff in error, the South Florida Farms Company to D. W. Stevenson, the defendant in error. The contract is set out in a letter from the South Florida Farms Company to D. W. Stevenson and his answer. These letters are as follows:

                              ''Moore Haven, Florida,
                                   July 10th, 1919.

Mr. D. W. Stevenson,

    Moore Haven,

Dear Mr. Stevenson.

    It is my understanding of our arrangement of today, that at the earliest convenient moment, surely by August first next, you are to assume the position of Manager of this Company, in connection with your present engagements

elsewhere, that your salary for this purpose shall be $250.-
00 per month, that your duties shall consist of the entire
control of all the business of the Company of every charac-
ter in Moore Haven and the Moore Haven office together all
of the Company employees but excluding the Company
books that are to be continued with the present arrange-
ment in Miami.     That you are to make reports of progress
at reasonable intervals to the Company President and to
no one else.     That the moving consideration for this ar-
rangement is not only the management of the Company
routine business but also the disposal of all the Company
holdings outside of the town of Moore Haven which con-
sist of about 52,000 acres of land in Lee County and about
30,000 unsold acres in DeSoto County.     It is agreed to
by us that we will accept an average price of Twelve Dol-
lars net per acre for the Lee Co. land and Twenty One Dol-
lars net for the DeSoto Co. land, no deductions or commis-
sions off to anyone but yourself.     That if within two years
from August first 1919 this entire unsold acreage is sold to
net the above figures to this Company and on terms accept-
able to us, you are to receive from us a commission of five
per cent.     If all the lands in either but not both Counties
is sold, your commission shall be two and half per cent. This
arrangement to hold good on any excess price which may be
obtained, the price mentioned herein being the absolute
minimum.

If neither of the County holdings are disposed of in full,
the entire commission falls and the salary mentioned above
is to be your full compensation.     In any event the com-
mission is to be figured on what is sold after August first
1919 and not to apply on anything sold prior to that date,
nor to any personal property such as machinery, etc., sold
nor to any land or buildings in the townsite of Moore Ha-
ven.

If this accords with your understanding of the matter, will you please write me to that effect.

With best regards,

Very truly yours,

South Florida Farms Co.<br>By Clarence M. Busch, Pres.''

''Clarence M. Busch, President,
South Florida Farms Company,

Miami, Florida.

Dear Sir:

Replying to your letter of July 10th, outlining an agreement between us covering the basis of my connection with your Company, will say that it is in accord with my understanding, therefore I am able to concur therein.

Yours very truly,

(Signed)            D. W. Stevenson.
Cashier.''

The question presented arises on the rulings of the court on the demurrer to the declaration, motions to strike pleas, and on giving certain instructions to the jury and refusing to give others.

The defendant below by several pleas sought to vary the terms of a written contract by averring that notwithstanding the contract provided for the payment of commissions under certain circumstances if certain acreage ''is sold,'' that Stevenson was only to receive commissions on the land

*sold by him.* The court properly sustained motions to strike these pleas, as they sought to alter and vary by parol evidence the terms of a written contract, and the cause was tried on the contract as written, without interpolations or amendments that varied its terms.

I think the court was right in treating this as a contract of employment and not as a mere brokerage contract. It partook of all the characteristics of contracts made by the railroad companies or others owning large tracts of land, that maintain a land department and employ managers to effect the sales of its lands. Such contracts of employment are taken out of the narrow rules governing mere contracts of brokerage to which the rule of *jus disponendi* applies.

The case of McManama v. Dyer (Mo. App.) 176 S. W. Rep. 1101, is strongly illustrative of the distinction between the employment of a manager of a business, the principal part of which may be the sale of lands for which he is to receive compensation partly by a fixed salary, and by commissions on all lands sold, and a mere contract of brokerage, where a person is employed to sell or find a purchaser for specific property.

In that case the bank became the owner of a pool room which it desired to sell and employed McManama to conduct the business until a suitable purchaser could be found. McManama was to receive one-half the net proceeds from the business, and one-half the proceeds of the sale in excess of $200.00. A sale of the property was effected by some other than McManama, and in a suit by him to recover his commissions it was contended, as in this case, that his contract was one of brokerage, and as he did not effect the sale or did not produce a purchaser ready, able and

willing to buy the property, he had no right to recover commissions.

Upon this point the court said: "In this case plaintiff, according to his version of the contract, was employed, not only to assist in finding a purchaser of the property, but also to conduct the business of running a pool hall for half the net profits, and was to half the net proceeds of a sale of the property after deducting $200.00 therefrom, regardless of whether or not he was a procuring cause of the sale. This was not the employment of a broker, but of a servant for a fixed period, *i. e.*, until a satisfactory sale of the property could be effected."

There is no dispute over the law governing brokerage contracts, but the contention of the defendant in error is that this was not a contract of brokerage, but a contract of employment, the compensation for which was to be a certain amount per month for a period of two years, during which time if all the lands, or all the lands in either county, belonging to the South Florida Farms Company were sold, the servant's compensation would be augmented by the payment of commissions. That the contract was one of employment and not one of simple brokerage, seems established by its very terms.

The construction placed upon it by the court below is the obvious one, justified and supported by its very plain and clear language. The trial judge construed it as a contract of employment, the compensation for which was to be $250.00 a month, and a percentage of 5 per cent. on sales of real estate, if all the land owned by the South Florida Farms Company in Lee and DeSoto Counties "is sold" within two years. From the contract it appears that the company was engaged in businesses other than selling lands. Stevenson's duties were to "consist of the entire

control of all the business of the company of every charac-
ter in Moore Haven, and the Moore Haven office together
all the employees of the company." The keeping of the
company's books, however, was excluded, as that was "to
be continued with the present arrangement in Miami."

There is no better way to state what this contract means,
than to use the very language of the contract itself. It is
only when we seek to change its obvious meaning, that we
must travel into the realms of construction and specula-
tion.

Its obvious meaning, which was accepted by the trial
judge, is a reasonable, fair and just one; whereas, if the
construction sought to be placed upon it by the plaintiff
in error is accepted, the contract becomes treacherous, un-
fair and unilateral, and in so far as it promises compensa-
tion for diligent efforts on the part of Stevenson when
completely performed by him or carried to the point of cer-
tain success, could be entirely thwarted at the option of
the other party to the contract.

Where a construction leads to this result, it should not
be adopted, particularly where, if the plain terms of the
contract are accepted no such result will follow.

Stevenson claims that under the contract, he was to re-
ceive for his services, in addition to $250.00 a month for
managing "all the business of the company of every char-
acter in Moore Haven," a commission of 5 per cent. on
the proceeds of the sale of about 82,000 acres of land in Lee
and DeSoto counties outside the town of Moore Haven,
"if sold for not less than the average price of $12.00 net
per acre for the Lee county land, and $21.00 net for the
DeSoto county land."

The clause of the contract upon which he relies is, "That

if within two years from August first, 1919, this entire unsold acreage *is sold* to net the above figures to this company, and on terms acceptable to us, you are to receive from us a commission of five per cent. If all the land in either but not both counties *is sold,* your commission shall be two and a half per cent.'' (Italics are mine.)

In these few lines the expression ''is sold'' is used twice in relation to the sale of certain acreage within two years from August 1, 1919, upon which Stevenson was to receive a commission.

The words, ''is sold,'' are not qualified or limited to a sale by any particular party or parties. They are broad and comprehensive, and include Stevenson, The South Florida Farms Company, and anyone else.

A bit further on in the contract this paragraph is found: ''In any event the commission is to be figured on what *is sold* after August first, 1919, and not to apply on anything *sold* prior to that date.'' (Italics are mine.) Here again the terms ''sold'' and ''is sold,'' are used without any qualification appearing there or in any other part of the contract to indicate that the sales referred to are limited to those made by Stevenson.

The difference in the meaning of the terms ''If any land is sold,'' and ''any land sold *by you*'' is so obvious that if the South Florida Farms Company had had it in mind, it would certainly have inserted it in some one of these four places.

It was noticeable that on the oral argument, in discussing the contract and expressing it several times in their own terms when not attempting to quote it literally, counsel for plaintiff in error, used the terms ''sold by him,'' and ''sold by you,'' thus illustrating our position that with that thought in mind, it is almost impossible to ex-

press it orally or in writing without the use of the words "by you," or of the term "if you sell."

The letter that is the basis of the contract was written by Mr. Busch, President of the South Florida Farms Company, and purports to set out what had been agreed on between the South Florida Farms Company and Stevenson. In four places, the terms "is sold," "are sold," and "sold" are used in relation to the commissions Stevenson was to receive, without once stating that the agreement was that he was to receive commissions only for the lands that *he sold* or that were sold "by you;" but when Mr. Busch attempts to state in his pleas, what was agreed on by him and Stevenson, he uses this language: "plaintiff was given the right to sell the lands of the defendant company situate in Lee and DeSoto counties, and for which services he was to be paid a commission for all the lands *he sold* only during the time of his agency, provided all the lands or holdings in each or both counties, were sold."

If that was the agreement why did he not so state it in his letter to Stevenson, which when accepted formed the contract? The letter was written on the day the verbal arrangement was made, and while fresh in the minds of both, and the pleas were written more than a year and three months afterwards.

The proposition submitted in writing to Mr. Stevenson by the South Florida Farms Company was to pay him a commission if all the land "is sold" without any qualification or limitation as to who was to sell it. That is the proposition that Mr. Stevenson accepted.

Having made such an offer, the president of the company should not now be heard to assert that he did not mean what he said, but that the proposition was submitted with the mental reservation that the land was to be sold by Stevenson only, before he could get any commission.

The construction sought to be placed upon the contract by the South Florida Farms Company not only makes the contract ''a trap for the unwary,'' but makes it a trap for any square dealing man who gives to the person with whom he is dealing credit for square dealings.

There is another line of reasoning from which it becomes apparent that if the contract is to be construed as contended for by the plaintiff in error, it is palpably unfair and unilateral. If it does not mean what it says—that is, that Stevenson would receive a commission on the sales, if all the land in either or both counties ''is sold'' within two years, without qualification by whom it was to be sold— then the company had the right to sell it or any part of it, or to enter into a contract with other persons to sell it, and thereby defeat, at its option, the earning of any commissions by Stevenson, without regard to how much work he may have done, or how much money he may have spent in advertising the property in his efforts to interest possible purchasers.

To illustrate: the contract provided that all the land in either or both counties must be sold within two years before Stevenson could earn a dollar of commission. He might sell 50,000 acres of the 52,000 in Lee county, and 25,000 out of the 30,000 in DeSoto county, and all his work and time and expense would go for naught if the residue was not ''sold'' within two years. He accepted the contract with full knowledge of that condition, and took the chance of loss of time, and money in advertising the property and finding a purchaser, if a sale of all the land was not effected, but he did not accept it with a construction that put it in the power of the South Florida Farms Company to prevent him from earning any commission after he had expended time, labor and money in finding a

market for the property, and the contract rendered nuga-
tory by the wilful act of the company by selling a single
acre of the lands in Lee and DeSoto counties.

Under the construction sought to be placed on the con-
tract by the plaintiff in error, the South Florida Farm
Company upon learning from Mr. Stevenson by the "re-
ports of progress" which he was required to make, that
he had about concluded negotiations for the sale of the
52,000 acres in Lee county, and expected to close the trade
in a short time, could prevent him from getting any com-
pensation whatever from the sale of the land—because if
the South Florida Farms Company had the right to sell
any part of it without paying Mr. Stevenson his commis-
sion, and if Mr. Stevenson was to get commissions only in
case he personally sold the entire 52,000 acres—it was
within the power of the South Florida Farms Company
to make his contract an absolute nullity, and prevent him
from earning any commission whatsoever by selling 2000
acres, or even less, or withdrawing a small acreage from
sale, and limiting Mr. Stevenson's sale to the residue.

Should we change the plain terms of the contract and
read into it the words "by you" in connection with the
expression if the land "is sold," when by doing so we
place it in the power of one of the parties to wholly defeat
the earning of any compensation whatsoever by Steven-
son?

The contract after reciting the employment of Mr. Stev-
enson as manager, etc., contains this clause: "That the
moving consideration for this arrangement is not only the
management of the Company's routine business but also
the disposal of all the Company's holdings outside the town
of Moore Haven," etc.  In the absence of testimony, it
might be conceded that this is sufficiently ambiguous as to

form a basis for a difference of opinion as to whether this "moving consideration" was one that induced the South Florida Farms Company, or Stevenson, or both of them, to make the "arrangement" set out in the contract—although the letter seems the most reasonable—but reference to the testimony makes it clear that this was the "moving consideration" that induced *both parties* to enter into the contract. At the time the arrangement was entered into Mr. Sevenson had an opportunity to engage in other enterprises which from their nature gave promise of greater compensation than $250.00 a month. His testimony is undisputed that at the time he and the South Florida Farms Company were negotiating for. this contract, he and Mrs. O'Brien and Mr. C. D. Bembo had arranged to organize a loan company for the purpose of making real estate loans. The company was incorporated at that time and Mrs. O'Brien and Mr. Bembo held the principal amount of the capital stock of the company which Stevenson was to manage. He was also negotiating "for the purchase of other lands, which were to be financed by the same parties." After he entered into his contract with the South Florida Farms Company, he had to decline the management of the loan company, and abandon his negotiations for the purchase of other lands. He also severed his "connection at that time, practically, with the O'Brien interests." His reason for giving up these other engagements was that he did not have time after accepting the employment of the South Florida Farms Company to give these other matters "the atention that was necessary." It seems quite palpable, then, that the "moving consideration" referred to in the contract acted upon both parties. The South Florida Farms Company wanted to dispose of all its real estate in Lee and DeSoto counties, more than it needed a manager for the other branches of its business, and Stevenson looked

to the larger compensation which would be derived from the sale of the lands, rather than to the small salary that went with the employment. The "moving consideration," therefore, that induced *them* to make the "arrangement" was the sale of the lands.

There is another stipulation in the contract, which if the construction sought to be placed upon it by the plaintiff in error is adopted, makes the contract grossly unreasonable, and places it in the power of the South Florida Farms Company to reduce Stevenson's commissions by half. It is this: "If all the land in either but not both counties is sold, your commission shall be two and a half per cent." This is a rather unusual stipulation, but there is a reasonable basis for it if its plain language is accepted, but if a strained construction is placed upon it, it becomes a concealed spring-gun.

Under the plaintiff in error's construction, if Mr. Stevenson sold at a price and on terms satisfactory to the South Florida Farms Company the entire 52,000 acres in Lee county, and was about to sell the 30,000 acres in DeSoto county, thereby earning 5 per cent. on both transactions, it would have been within the power of the company not only to deprive him of any commission on the 30,000 acres in DeSoto county, but to cut his commission on the 52,000 acres in Lee county from 5 per cent. to 2½ per cent.

These are some of the injustices, the traps for the unwary, the concealed spring guns, which this contract contains if the construction contended for by the plaintiff in error is adopted. On the other hand, against the construction placed upon the contract by Mr. Stevenson and by the trial judge, all that can be said is that the amount of the verdict, $61,884.03 is too much money for a man to make out of sales of lands amounting to $1,236,880.75, in

about three months, when apparently neither party contemplated that all the lands would be sold much before the expiration of the two years' life of the contract.

If the trial judge's construction of this contract is rejected, we must not only reject the plain, obvious, everyday meaning of the terms and expressions used; add other words either by interpolating them ourselves or permitting the defendant below to prove them by parol, and substitute a one-sided, unfair and unreasonable contract for one that is fair and reasonable, but we must also reject this entire clause as meaningless; ''In any event the commission is to be figured on what is sold after August first, 1919, and not to apply on anything sold prior to that date.''

It is apparent that both parties had in mind that between the date when the arrangement was entered into and August 1st when Stevenson's work was to commence, there might be sales of land, this clause was inserted to make clear that Stevenson was not to receive commissions on such sales. This was entirely unnecessary if the intention of the parties was that Stevenson was to receive commissions only on sales made by him, as he could not make any sales prior to August 1st.

On the other hand, if the obvious meaning of the contract is accepted, this clause indicates that Stevenson was to receive commissins on all lands ''sold'' after August 1st, but not to any lands sold prior to August 1st, 1919. His right to sell the lands was not to begin until August 1st, and there could be no sales of land made by him prior to that date. What then was the use of this clause if Stevenson's right to commissions was limited to sales made by him?

Here we have a contract that is a model of clearness and conciseness: its form and language indicate that great care was taken by the President of the company to define clearly and exactly what was the arrangement between him and Stevenson; great particularity was exercised in stating the requirements under which Stevenson would be entitled to commissions, and these requirements are stated affirmatively and negatively. So clearly, fully and precisely were the terms of the arrangement stated by Mr. Busch, President of the company, that Mr. Stevenson accepted them without the change of a word, or the crossing of a "t" or the dotting of an "i;" a condition seldom found when one party attempts to express in writing to another, what had been agreed upon verbally between them.

The contract as construed by the court below is an harmonious whole, needing no interpolations, no eliminations.

As sought to be construed by the plaintiff in error, we must interpolate in four places the words "by you," and we must eliminate the clause about when Stevenson would begin to earn commissions, as useless and meaningless.

The foregoing discussion assists in the consideration of the order of the Circuit Judge overruling the demurrer to the declaration.

I think that the declaration was not subject to the attack made upon it by the demurrer, and the court was right in overruling it. Under the construction that I place on the contract, that it was one of employment for a period of two years, and that Stevenson was to receive commissions on the sale of 52,000 acres of land in Lee county and 30,000 acres of land in DeSoto county, if all the land in either or both counties was sold within two years, it gave him the exclusive right to earn these commissions. The exclusive

right "to sell," does not mean that the person having such right should be the only person who could execute a deed of conveyance for the property sold, but the effect and meaning of the term, and particularly as used in this contract, is that during that period no one else should have a right to sell under conditions or circumstances that would deprive an employee of his commissions.

In that sense, he did have the exclusive right to sell, and there is no variance between the declaration and the contract sued upon.

I think the construction placed upon the contract by the trial judge was the obvious one, that it was the only fair one, and that his rulings on all matters when this question was presented were correct.

TAYLOR, J., concurs.

## On Rehearing.

WHITFIELD, J.—A rehearing was granted herein to determine whether a remittitur should be allowed as an alternative for a reversal of the judgment for a new trial.

Where liability is shown and verdict and judgment are rendered for an excessive amount, and the court can satisfactorily determine from the record the amount of the excess or the amount properly recoverable whether in tort or contract, the court may authorize a remittitur of the excess as an alternative for a reversal. Pensacola Sanitarium v. Wilkins, 68 Fla. 447, 67 South. Rep. 124; Postal Telegraph-Cable Co. v. Scott, 76 Fla. 336, 79 South. Rep. 767; McLean v. Spratt, 20 Fla. 515; Gunning v. Heron, 25 Fla. 846, 6 South. Rep. 855; Savannah, F. & W. Ry. Co. v. Davis, 25 Fla. 917, 7 South. Rep. 29; Florida Ry. & Nav.

Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714; Arnau v. First Nat. Bank, 36 Fla. 395, 18 South. Rep. 790; Florida Cent. & P. R. Co. v. Seymour, 44 Fla. 557, 33 South. Rep. 424; Florida Cent. & P. R. Co. v. Foxworth, 45 Fla. 278, 34 South. Rep. 270; Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 South. Rep. 1001; Saunders Transfer Co. v. Underwood, 77 Fla. 167, 81 South. Rep. 105; Louisville & N. R. Co. v. Frank, 76 Fla. 384, 80 South. Rep. 60; Luce v. Lee, 79 Fla. 693, 84 South. Rep. 726; Tampa Elec. Co. v. Gaffga, 81 Fla. 268, 87 South. Rep. 922; Lindsey Turpentine Co. v. Soule. 81 Fla. 339, 87 South. Rep. 782; Seaboard Air Line Ry. Co. v. Prewitt, 81 Fla. 423, 88 South. Rep. 160; Atlantic Coast Line R. Co. v. Conant, 79 Fla. 668, 84 South. Rep. 688; Empire Drug Co. v. Smith, 78 Fla. 594, 83 South. Rep. 458; Standard Growers' Exchange v. Martin, 80 Fla. 864, 87 South. Rep. 54; Nolan v. Moore, 81 Fla. 600, 88 South. Rep. 601; Florida East Coast R. Co. v. Schumacher, 63 Fla. 137, 57 South. Rep. 603; Florida East Coast R. Co. v. Hayes, 67 Fla. 101, 64 South. Rep. 504; Atlantic Coast Line R. Co. v. Pipkin, 64 Fla. 24, 59 South. Rep. 564; Atlantic Coast Line R. Co. v. Shouse; Tampa Electric Co. v. Limpus and Lunham v. DeMerritt, recently decided. See also Washington & G. R. Co. v. Harmon's Adm'r., 147 U. S. 571,, 13 Sup. Ct. Rep. 557; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. Rep. 571.

If the action is *ex contractu* on items that are severable, and on appropriate issues liability is shown as to some and not to other items, a remittitur may be permitted. See Greenblatt v. McCall & Co., 67 Fla. 165, 64 South Rep. 748; Lewis v. Meginniss, 30 Fla. 419, 12 South. Rep. 19; Turner v. Adams, 39 Fla. 86, 21 South. Rep. 575; National Surety Co. v. Williams, 74 Fla. 446, 77 South. Rep. 212.

In all the above cases the liability of the defendant for

the amount for which the judgment was affirmed, upon remittitur, was clearly established.

Where the judgment, or the verdict on which the judgment is based, is in excess of the damages proved and the evidence clearly shows the amount for which judgment should have been rendered, the judgment may be affirmed on condition that plaintiff remit the excessive part of his recovery. 4 C. J. p. 1142. But where liability of the defendant is not clearly shown, a remittitur will not be awarded. Atlantic Coast Line R. Co. v. Wilson, 81 Fla. 117, 87 South. Rep. 314.

In directing that a remittitur be entered for a stated amount upon a verdict awarding damages, and that upon failure to do so a new trial be granted, the court, whether trial or appellate, does not usurp the functions of a jury or deny to either party a right to a jury trial. The power and duty rests in the court to determine the validity of the verdict both as to its nature and amount; and in ordering a remittitur, the court merely adjudges that the amount of the verdict ordered to be remitted is, on the pleadings and evidence, illegal. Atlantic Coast Line R. Co. v. Pipkin, 64 Fla. 24, 59 South. Rep. 564; Arkansas Val. Land & Cattle Co. v. Mann, 130 U. S. 69, 9 Sup. Ct. Rep. 458; Koenigsberger v. Richmond Silver Min. Co., 158 U. S. 41, text 52, 15 Sup. Ct. Rep. 751.

In this case the action was on a contract of employment and under the issues made, verdict and judgment were rendered under the rulings of the trial court which in effect were that the plaintiff was entitled to commissions on sales of all the lands referred to in the contract if all such lands were sold even though some of the lands were sold by the owner of the lands and the employee had no part in such sales. This court held that under the contract the plaintiff

was entitled to commissions only on the sales of lands made
by him, or in which sales he had a proper part, and as the
verdict had no supporting testimony, in effect found that
all the lands referred to in the contract had been sold, the
commissions of the plaintiff for sales of land made by him
under the contract should be at the rate fixed by the con-
tract conditioned upon the sale of all the lands referred
to in the contract of employment.

It is established that a portion of the lands were sold
to one Jeffries, and that the plaintiff had "not a thing"
to do with the sale to Jeffries.   There is evidence that an-
other portion of the lands were sold to Healy by the plain-
tiff.

The defendant below insists that as the main issues sub-
mitted to the jury were whether all the lands had been sold
by either the plaintiff or by the defendant, and the amount
of the commissions due the plaintiff as commissions on all
such sales whether the plaintiff or the defendant made the
sales, the jury were misled by the rulings of the court and
did not determine whether any, or if any how many, of
the lands were sold by the plaintiff, so that a remittitur
would be unjust to the defendant.

The plaintiff below contends in effect that on the issues
made, the evidence clearly shows that the Healy sale was
made by the plaintiff, and that the plaintiff being willing
to enter a remittitur for the portion of the judgment cover-
ing commissions on sales made by the defendant in which
sales the plaintiff had no part, the court should permit
such a remittitur and affirm the judgment for the amount
of commissions due the plaintiff on sales of lands that the
evidence shows were made by the plaintiff.

The main opinion of this court construed the contract of

employment, and in applying the contract as construed, assumed the fact involved in the record, that all the lands in both counties had been sold, so as to entitle the plaintiff to the commissions that may be covered by the contract as construed by the court.

The construction put upon the contract of employment by the rulings of the trial court, *i. e.* that the plaintiff was entitled to commissions on all sales of the lands whether made by the plaintiff or by the defendant rendered immaterial a finding by the jury whether any or all of the lands referred to in the contract of employment were in fact sold by the plaintiff; and if the contract required the plaintiff to consummate the sales of the lands by himself or by his own means, it could not be said on this record, in view of the conflicts in the testimony as to the sale made to Healy, that it is clearly shown or definitely found that the plaintiff *alone* did sell specific portions of the lands to Healy and could have sold to him 800 acres more, even though it does appear that by the sale made to Jeffries by the defendant of "all of the Lee county lands," the provision of the contract was satisfied which states that "if neither of the company holdings are disposed of in full, the entire commission fails and the salary mentioned above is to be your (plaintiff's) full compensation."

But the contract of employment clearly contemplated that the plaintiff was to use the defendant's facilities and to co-operate with other officers and employees of the defendant company in making sales of the lands referred to in the employment contract; and this necessarily gives the plaintiff a right to commissions on consummated sales of lands in which he in good faith and purpose participated pursuant to the contract. As to the sale of lands to Jeffries, the plaintiff testified that he had no part whatever

therein, consequently he cannot recover commissions for that sale.

It is, however, made clear by the evidence that the plaintiff did have a substantial and appreciable part in making the sale of a portion of the lands to Healy that was eventually approved and made effective by the defendant company, which under the contract, entitles the plaintiff to commissions on that sale, provided all the lands had been sold and this latter proposition under the issues made and the rulings of the court, is determined by the jury on the conflicting evidence.

The provision in the employment contract that the price shall be ''twenty-one ($21.00) dollars net for the DeSoto County land, no deduction or commissions off to any one but yourself,'' merely excludes deduction from the stated prices and commissions to any one except the plaintiff. The DeSoto County lands that had not been sold by the defendant, were sold for twenty-five ($25.00) dollars per acre.

The president of the defendant company testified that a sale of the lands to Healy was eventually approved by the company at twenty-five ($25.00) dollars per acre and it is not shown or suggested that the approved contract contained any deductions or commissions or other matter affecting the price of twenty-five ($25.00) dollars per acre, even if such provisions except as to deductions in price or commissions to others than the plaintiff would affect the plaintiff's right under the employment contract to the commissions provided for therein for the sale or ''disposal'' of lands referred to in the contract, in which sales or disposals the plaintiff had a part pursuant to the contract.

Section 4 of the Declaration of Rights of the Constitu-

tion provides that "right and justice shall be administered without sale, denial or delay;" and when by due course of law, a severable portion of a claim or demand has been proven under such issues that could not have prejudiced the defendant as to the severable portion of the claim or demand that has been clearly and fairly established, such established portion should be enforced by appropriate procedure of remittitur or otherwise, in order that "right and justice shall be administered without * delay," when the remainder of the plaintiff's claim or demand is not duly proven or is shown to be untenable.

It is considered, ordered and adjudged that if within thirty days the plaintiff below enters a remittitur, of $36,-898.75 of the total amount of $61,884.03 contained in the judgment, the judgment for the remainder, or for $24,985,-28, shall stand approved; otherwise, the judgment will stand reversed for a new trial.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.