260 So.2d 529 (1971)
B & B SUPER MARKETS, INC., and B & B Cash Grocery Stores, Inc., Appellants,
v.
Emil METZ, Appellee.
No. 70-855.
District Court of Appeal of Florida, Second District.
December 17, 1971.
On Rehearing March 29, 1972.
Rehearing Denied May 3, 1972.
Gary M. Witters, of Allen, Dell, Frank & Trinkle, Tampa, for appellants.
Jack F. White, Jr., Clearwater, for appellee.
PER CURIAM.
Affirmed.
PIERCE, C.J., and LILES and HOBSON, JJ., concur.

ON PETITION FOR REHEARING
PER CURIAM.
It was the late Mayor Fiorello LaGuardia who, after a particularly bad appointee had gone sour, remarked laconically, "you know, I don't make many mistakes but when I do its a beaut". The Little Flower may have had something for we feel somewhat the same way after our erstwhile per curiam affirmance in this case. But like the late Justice Ellis, in his opinion granting rehearing in Reynolds v. Reynolds, 1933, 113 Fla. 361, 152 So. 200, text 201, we can feel justifiably contrite in rectifying such "egregious error" by rescinding our former decision and reversing on the merits, which we now do.
Appellee Emil Metz brought an action in the Pinellas County Circuit Court against appellants B & B Super Markets, Inc., and B & B Cash Grocery Stores, Inc. (hereinafter referred to as B & B), claiming he was due a real estate broker's commission for "procuring" an assignment of a lease from B & B to Great Atlantic & Pacific Tea Company, (hereinafter referred to as A & P), regarding a grocery store site located in Cleveland Plaza Shopping Center in Clearwater theretofore occupied by B & B.
*530 In November, 1960, an employee of A & P in a conversation with one of B & B's employees, mentioned that A & P would be interested in acquiring the site in question at Cleveland Plaza and suggested that the Jacksonville A & P office should be contacted. This advice was relayed to the President of B & B, one Bever, who, on January 6, 1961 had telephone conversation with the President of A & P's southern division, Robert Smith, in Jacksonville, in which conversation the sale of the store and assignment of B & B's current lease was discussed. The same day Bever went over the matter at length with his attorney, who advised Bever that permission for such assignment would have to be obtained from Sapir Investment Company of Boston, lessor to B & B of the premises in question. Four days later, on January 10, 1961, Bever, in company with one Thompson, who handled the leases in Cleveland Plaza, conferred with B & B's attorney, who then and there advised Sapir by letter concerning the developments aforesaid and requested permission of Sapir for B & B to sign its lease to A & P. On January 13, 1961 Sapir's attorney wrote B & B's attorney, acknowledging the latter's prior letter of January 10, 1961, requesting consent of Sapir to assignment of the lease to A & P, and mentioned that because of certain problems that would have to be worked out, further discussion would be advisable.
On January 10, 1961, one Vinson, an employee of Emil Metz, a local real estate broker, had sent letter to one Lee, an employee of B & B, in which he started off: "This may indeed by a long shot into the dark, but nothing ventured nothing gained. I am wondering if you would be interested in subleasing the building you now occupy in Cleveland Plaza ...", and winding up with certain sales talk in behalf of such "subleasing". There were a couple of conversations thereafter between Vinson and Lee and also between Vinson and one Jamerson, another B & B employee, but there was no semblance of an agreement between them as to any sale of the lease or listing of the lease for sale, and they would have no authority to speak for or bind B & B in any event. In the meantime there was continuous discussions regarding the lease and its assignment between Bever, Sapir and A & P from January 10, 1961 until A & P finally took possession of the premises on July 17, 1961 under an assignment negotiated between A & P and B & B. It was not until the same month of July that Metz or Vinson ever demanded a real estate commission for having procured a purchaser for B & B's lease. All responsible officials of B & B refuted any claim to such commission as did the top officials of A & P who stated "we have no record of correspondence and no recollection of conversation with anyone else [except B & B itself] concerning this matter".
We are convinced from a meticulous consideration of the entire record filed here that the trial Court was in error in ordering payment by B & B to Metz of $11,200.00 as supposed brokerage commission.
The evidence was uncontradicted that at least two weeks prior to any possible implied agreement with Vinson, B & B had started negotiations with A & P and also with Sapir as lessor of the premises, relative to the assignment of the lease to A & P. This was substantiated by the letter written to Sapir by B & B's attorney on January 10, 1961, and the reply from the lessor's attorney dated January 13, 1961, concerning consent and permission for B & B to assign the lease to A & P. Furthermore there was in evidence a letter from A & P's Vice President to Bever, B & B's President, in which it was established that discussions leading to negotiations between B & B and A & P began with B & B's contact with A & P and that there was no correspondence or recollection of conversations between the responsible officials of A & P "with anyone else concerning this matter".
*531 To be the procuring cause of a sale or lease or real estate, a broker must show that he called the potential purchaser's attention to the property and that it was through his efforts that the sale or lease assignment was consummated. National Airlines, Inc. v. Oscar E. Dooly Assoc., Inc., Fla.App. 1964, 160 So.2d 53; 12 Am.Jur.2d, Brokers, § 190; 5 Fla.Jur., Brokers, § 45; Florida Real Property, Practice I, CLE, § 2.28. As hereinbefore pointed out, the evidence was undisputed that B & B was already negotiating with the eventual purchaser before Vinson got into the picture.
In the case of Minneapolis Steel and Machinery Co. v. Yeggy, 1921, 69 Colo. 313, 194 P. 362, the Colorado Supreme Court held that a plaintiff broker was not the procuring cause of the sale where undisputed evidence revealed that the defendant had been negotiating with the purchaser several days prior to the plaintiff's agency contract relied upon. See also the late case of Wilkins v. W.B. Tilton Real Estate & Insurance, Inc., Fla.App., 257 So.2d 573.
Metz did not ever claim or try to prove that the listing agreement, even if there was one, was an exclusive right to sell. Certainly B & B did not surrender its own right to sell its own lease to a purchaser not procured by the broker. Nicholas v. Bursley, Fla.App. 1960, 119 So.2d 722, 88 A.L.R.2d 929; Rubin v. Beville, Fla.App. 1961, 132 So.2d 783; Flynn v. McGinty, Fla. 1952, 61 So.2d 318; South Florida Farms Company v. Stevenson, 1922, 84 Fla. 235, 93 So. 247.
Generally, appellate Courts will not disturb findings of the trier of facts, but if such findings are contrary to the manifest weight of the evidence, or are contrary to the legal effect of the evidence, the reviewing Court has not only the authority and power, but it is its duty, to reverse. Daniels v. State, Fla.App. 1971, 254 So.2d 395; Clements v. Plummer, Fla.App. 1971, 250 So.2d 287; Heath v. First National Bank in Milton, Fla.App. 1968, 213 So.2d 883. In this case the evidence was overwhelmingly contrary to the finding of the trial Court that the sale of the lease was negotiated or that the lease was sold as a result of any previous effort made by Vinson or that the sale or assignment of the lease was a result of the efforts of Vinson, whether acting under authority of any implied agreement or otherwise.
In accordance with the foregoing, we withdraw our former per curiam affirmance, grant appellant's petition for rehearing, reverse the judgment of the trial Court appealed from, and enter judgment here dismissing the cause in the lower Court. See Poling v. City Bank & Trust Company of St. Petersburg, Fla.App. 1966, 189 So.2d 176; In Re: Estate of Charles v. Maxcy, deed., Fla.App. 1970, 240 So.2d 93.
So ordered.
PIERCE, C.J., and LILES and HOBSON, JJ., concur.